TRASK *v.* MODERN PATTERN & MACHINE CO.

1. MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—FINDING OF FACTS BY DEPARTMENT CONCLUSIVE.

   In proceedings by an injured servant under the workmen's compensation act, the finding of partial disability by the department of labor and industry, although based on meager evidence, is conclusive; it being the exclusive province of the department to determine the facts.

2. SAME—PARTIAL DISABILITY—COMPENSATION MUST BE PROPORTIONED TO LOSS OF EARNING CAPACITY.

   On certiorari to review a finding by the department of labor and industry that plaintiff was partially disabled, an award of compensation under section 10, pt. 2, of the act, without determining the proportionate extent of impairment of earning capacity at the kind of work she was doing when injured, as required by section 11, taking into consideration changes in wages and labor conditions, will be set aside and the case remanded for further proceedings.

Certiorari to Department of Labor and Industry. Submitted October 6, 1922. (Docket No. 22.) Decided June 4, 1923.

Linna Trask presented her claim for compensation against the Modern Pattern & Machine Company for an accidental injury in defendant's employ. From an order denying a petition to discontinue payments under an award, defendant and the General Accident, Fire & Life Assurance Corporation, insurer, bring certiorari. Reversed and remanded.

*Kerr & Lacey*, for appellants.

STEERE, J. On April 30, 1920, plaintiff grazed or

On consideration of possible earnings of injured employee in other employment, in fixing compensation under workmen's compensation acts, see note in L. R. A. 1916A, 377.

slightly cut the skin of her left forefinger while handling index cards in the office of the defendant Modern Pattern & Machine Company, where she was employed as its auditor and office manager, receiving a salary of $60 per week. Infection developed in the finger followed by blood poisoning which extended through her left arm and shoulder resulting in serious illness and total incapacity for some months. The accident was duly reported by defendants to the (then) industrial accident board and an agreement made by them to pay her compensation at the maximum rate during total disability in accordance with the terms of the compensation act. This was regularly paid up to and including April 8, 1921. On July 13, 1921, defendants filed a petition with the department of labor and industry (successor of the industrial accident board) asking to be relieved from further payments on the ground that plaintiff had regained her health and sufficiently recovered from the effects of her injury to perform the duties of the position in which she was employed when injured, and had, since March 28, 1921, been engaged in remunerative employment, although for a less wage than she was receiving when injured owing to changed industrial conditions and resulting reduction of wages. Plaintiff answered denying full recovery and alleging injury of a permanent nature by reason of which she could not perform certain of the duties of her former position, and consequent inability to secure such employment.

The commission of the department of labor and industry denied defendants' petition, finding and ruling, so far as material here, as follows:

"2. That on account of applicant's disability she is unable to perform all the work she was performing at the time of her injury, and that on account of said disability she is unable to earn as much wages as she was earning at the time of her injury.

"3. The applicant was receiving at the time of the accident an average weekly wage of $60 and at the present time she is receiving $30 per week.

"4. That the applicant should in accordance with the provisions of the law, receive 60 per cent. of the difference between what she was earning at the time of the accident and what she is able to earn at the present time, not to exceed $14 per week. In this case, the maximum of $14 should be paid.

"5. That there is now due and payable from April 9, 1921, the sum of $280 which amount should be paid to said applicant, and receipts therefor filed with the commission."

After the infection had been relieved and she had apparently recovered her health, plaintiff applied for her former position, stating she felt able to perform its duties. Owing to changed business conditions and falling off in volume of its work, the Modern Pattern & Machine Company had reduced the number of its employees, reduced the wages of some and eliminated the office which she had formerly held. She was offered a position on its clerical force at much less wages than she received in her former position, which she declined. In the latter part of March she found employment as bookkeeper with the Harvey G. Wilson Company at $30 per week, and was yet so employed at the time of hearing the petition. She testified that she was also doing "the banking and other things" there, her work being similar "in a way" to her former position. When asked what her former duties were with the Modern Pattern & Machine Company she answered, "I audited the books, employed the office help and made collections." On August 8, 1921, when her testimony was taken, she stated of her then disabilities that the fingers of her left hand and her left shoulder were yet stiff, she could not raise that arm clear up and down, demonstrating what she conceded to be about an 18-inch arc from a vertical position, that the condition of her arm remained about

the same since she resumed work although there might be a little improvement, that when she attempted to raise it higher it pained her, and she could not use the typewriter as well as before, or use the telephone with her left hand and at the same time write with her right hand as formerly, she being right-handed.

That the infection had disappeared and plaintiff recovered her general health appears to be undisputed. Four physicians who had examined her were called as witnesses.  They testified to finding limitation in the free movement of her left shoulder as a result of previous infection in that point.  None of them testified that it disabled her from performing the duties of the employment in which she was engaged at the time of the accident as described by her and a Miss Herter, who was one of the office force with her at that time.  Three of the four physicians testified they saw nothing in her physical condition to interfere with her performing the duties of her former position.  Dr. Couchman, called as her witness, was not questioned on that subject.  He testified to discovering a limitation in the function of her left shoulder and that it was smaller than the right.  He measured her hands "as for a glove," finding the left 7 and the right 7½ inches, but found her forearms of equal measurement.  On cross-examination he stated that it was common to find the right hand larger than the left.  The other physicians confined the limitation of function which they found in her shoulder to an outward and upward movement, which Dr. Drescher described in non-technical terms as inability "to fully raise her arm."

It is urged in behalf of defendants that there is no testimony in the record which can be said to fairly support the finding that any limitation of function in plaintiff's shoulder disables her from performing her duties at the employment in which she was engaged

when injured and earning whatever wages that position commands; that the fact she was receiving but $30 per week at the time of the hearing and had received $60 per week at the time of the accident is in no sense a controlling factor; and, assuming a partial disability existed, the method of computation adopted by the commission of the department of labor and industry is not in harmony with the requirements of the employer's compensation act.

In the exercise of its prerogative to find the facts the commission found partial disability based on meager evidence to support such finding as applied to plaintiff's former employment, but sufficient, as we conclude, to support the same within the exclusive province of the commission to determine the facts. No finding was made, however, as to the degree or percentage of plaintiff's partial disability, nor determination of the proportionate extent of impairment of her earning capacity in the line of her employment, as of the time of her accident.

Pertinent portions of sections 10 and 11, part 2 of the workmen's compensation law, as amended (Act No. 64, Pub. Acts 1919, and Act No. 41, Pub. Acts 1917 [Comp. Laws Supp. 1922, §§ 5440, 5441]), provide as follows:

"SECTION 10. While the incapacity for work resulting from the injury is partial, the employer shall pay, or cause to be paid, as hereinafter provided, to the injured employee a weekly compensation equal to sixty *per centum* of the difference between his average weekly wages before the injury and the average weekly wages which he is able to earn thereafter, but not more than fourteen dollars a week; and in no case shall the period covered by such compensation be greater than five hundred weeks from the date of the injury. * * *

"SEC. 11.     * * *     (e) The weekly loss in wages referred to in this act shall consist of such percentage of the average weekly earnings of the injured em-

ployee computed according to the provisions of this section as shall fairly represent the proportionate extent of the impairment of his earning capacity in the employment in which he was working at the time of the accident, the same to be fixed as of the time of the accident, but to be determined in view of the nature and extent of the injury."

In only finding an indefinite, partial impairment and then resorting to the simple method of computing their award under section 10 on the basis of a percentage of difference between what plaintiff was earning before and after the accident, the commission adopted an easy method which ignored the requirement of section 11 that the average weekly earnings of the injured employee should be computed according to the provisions of *this section* as shall *fairly represent* the *proportionate extent* of impairment of her earning capacity at the kind of work she was doing when injured, to be fixed as of the time of the accident but to be determined in view of the nature and extent of her injury.

Not only must sections 10 and 11 be construed together, but in the light of other provisions of the act. If the amount to be awarded was based entirely on the provisions of section 10 it would be unfair either to the employer or employee unless the rate of wages in that line remained constant. If there was a surplus of such labor with low wages at the time of the accident and labor scarce with wages abnormally high at the time of the hearing it would manifestly work an injustice to the employee, while the reverse of such conditions would likewise be unfair to the employer. There was in this case undisputed evidence of depressed industrial conditions at the time of the hearing, resulting in surplus of clerical labor and reduced scale of wages, and of the reverse at the time of the accident. Plaintiff's brother, who was sworn as a witness in her behalf,

testified that he was regularly employed as an accountant at $60 per week in January, 1921, lost his position because the company for which he worked failed, he had been unable to secure employment in that line during the past seven months and had taken employment selling stocks at $25 per week. If plaintiff had not met with the accident, it is not an unreasonable inference that she would have met with a somewhat similar employment experience as her brother. The proportionate impairment in earning capacity in that line of employment by reason of and considered as of the time of the accident—her loss of power to earn or what she could earn if the accident had not befallen her—is the question to be fairly determined in view of the nature, extent and continuance of her injury as shown at the time of the hearing, where the issue is partial incapacity. The wages she did earn at the time of the accident and what she is able to earn at the time of the hearing are made elements in reaching a determination, but the degree or percentage of partial impairment, if shown, as well as changes in wages and conditions of labor, are material considerations in arriving at impairment of earning capacity.

The commission is authorized to review an award of weekly payment at any time on application of either party. It is common knowledge that there are periods of prosperity and of depression reflected in changes of labor conditions and wages. These as well as the percentage of partial disability of the injured employee are elements entering into a legal determination of the proportionate extent of partial impairment of earning capacity at the work in which the employee was engaged at the time of the accident.

"As bearing upon that question evidence might be received of subsequent earnings in the same or other employment, and of changes in wages and conditions of labor. *VanDriel* v. *Stevens*, 200 Mich. 291. The

rule is stated in 17 C. J. p. 898." *Norris* v. *Elevator Co.*, 216 Mich. 554.

The subject is instructively reviewed in the annotations to *Woodilee Coal & Coke Co.* v. *M'Neill*, as reported in 2 A. L. R. 1637 (App. Cas. [1918] 43), which holds that in passing upon the degree of partial impairment regard should be had to extraneous circumstances, including as a factor a general rise or fall in wages of the workman's calling. The finding of the commission ignores elements essential to a valid award, and is not in accordance with the statute or the legal rights of the parties.

The award must be set aside and the case remanded for such further proceedings as the parties may desire and the commission may determine, in accordance with the statute and this opinion.

Reversed.

WIEST, C. J., and FELLOWS, McDONALD, CLARK, BIRD, and SHARPE, JJ., concurred. MOORE, J., did not sit.