LANGKILL *v.* ROBINS CONVEYING BELT CO.

1. WORKMEN'S COMPENSATION—FINDING OF DEPARTMENT—SKILLED WORKMAN—PARTIAL DISABILITY.

Record on defendant's appeal from order requiring payment for partial disability of a sum equal to difference between average weekly wages at time of injury and amount received as average weekly wages at time of proceeding to stop compensation *held,* to disclose plaintiff was employed as a skilled workman both at time of injury and when he returned to work for a different employer and that he is partially disabled as a result of the injury.

2. SAME—MEASUREMENT OF IMPAIRMENT OF EARNING CAPACITY.

Body of section 11e, part 2, of the workmen's compensation act provides method of determining the percentage or degree of incapacity to reduce compensation but does not affect the first determination of the basic figure, *i. e.,* the earning capacity in the employment at the time of injury (2 Comp. Laws 1929, §§ 8425, 8426, 8427b, e).

3. Same — Basis of Computing Compensation — General Wage Decrease.

> General wage decrease for skilled labor may not be considered in determining compensation payable since statute designates basic figure as average weekly earnings at time of injury (2 Comp. Laws 1929, § 8427e).

4. Same—Structural Steel Worker—Average Weekly Earnings —Compensation Payable.

> Structural steel worker whose average weekly earnings were $48 at time of injury and only $37.44 at similar employment for different employer at time of proceeding to stop compensation, may properly receive $10.56 weekly for partial disability since present average weekly earnings and compensation do not exceed his average weekly earnings at time of injury (2 Comp. Laws 1929, § 8427e).

5. Costs—Briefs.

> No costs are allowed plaintiff on affirmance of his award against employer by department of labor and industry, where no brief was filed in the Supreme Court.

Appeal from Department of Labor and Industry. Submitted January 5, 1937. (Docket No. 13, Calendar No. 39,156.) Decided March 1, 1937.

Lons Langkill presented his claim against Robins Conveying Belt Company, employer, and Travelers Insurance Company, insurer, for compensation for personal injuries suffered in defendant's employ. On petition to stop compensation. Award to plaintiff. Defendants appeal. Affirmed.

*Vandeveer & Vandeveer* (*Thomas L. Lott,* of counsel), for defendants.

Sharpe, J. Plaintiff, a structural iron worker, with weekly wages of $48 was injured September 12, 1934, during the course of his employment. By agreement, compensation was paid at the rate of $18 per week during total disability. November 27, 1935, plaintiff was employed by the Great Lakes

Steel Corporation as a "structural rigger" with average weekly wages of $37.44. November 14, 1935, defendant company filed a petition to stop compensation and on May 19, 1936, the department issued an order reducing plaintiff's compensation to $10.56 per week for partial disability as of November 10, 1935. Defendants appeal and contend that the department was in error in computing the amount of the award under the provisions of Act No. 10, pt. 2, § 11 (e), Pub. Acts 1912 (1st Ex. Sess.), as amended (2 Comp. Laws 1929, § 8427[e]).

It is the theory of defendants that the provisions of part 2, § 10 of the above act (2 Comp. Laws 1929, § 8426) should be followed when the injured person returns to the same kind of work he was doing at the time of the injury; and that section 11 (e) applies when he returns to different kind of work.

The record discloses and the department made a finding that plaintiff was employed as a skilled workman both at the time of the injury and when he returned to work for a different employer; and that plaintiff is partially disabled as a result of the injury of September 12, 1934.

In *Trask* v. *Modern Pattern & Machine Co.*, 222 Mich. 692, we held that part 2, § 10 of the act (2 Comp. Laws 1929, § 8426) and part 2, § 11 of the act (2 Comp. Laws 1929, § 8427) must not only be construed together but also in the light of other provisions of the act. In the *Trask Case, supra*, plaintiff was employed as an auditor and office manager (skilled employment) at a salary of $60 per week. After partial recovery plaintiff was employed in similar work at a salary of $30 per week. The court said:

"In only finding an indefinite, partial impairment and then resorting to the simple method of

computing their award under section 10 on the basis of a percentage of difference between what plaintiff was earning before and after the accident, the commission adopted an easy method which ignored the requirement of section 11 that the average weekly earning of the injured employee should be computed according to the provisions of this section as shall fairly represent the proportionate extent of impairment of her earning capacity at the kind of work she was doing when injured, to be fixed as of the time of the accident but to be determined in view of the nature and extent of her injury.''

In *MacDonald* v. *Great Lakes Steel Corp.*, 268 Mich. 591, we said:

''Section 9 of the compensation act, 2 Comp. Laws 1929, § 8425, provides, for total incapacity for work, weekly compensation equal to two-thirds of the employee's average weekly wage. Section 10 (2 Comp. Laws 1929, § 8426), provides, for partial incapacity for work, weekly compensation of two-thirds 'of the difference between his average weekly wages before the injury and the average weekly wages which he is able to earn thereafter.' * * *

''We discover in the proviso added in 1927 no intention to abolish the difference between skilled and unskilled labor pointed out in the cases cited. On the contrary, the reenactment of the body of section 11 (e), in the light of the decisions, demonstrates an intention that impairment of earning capacity shall continue to be computed upon the basis of employment at the time of the injury.

''The proviso has no effect upon the determination of the basic computation of compensation. It merely allows a sort of set-off against it. The first controlling figure in the computation is found from section 9, as to total disability, section 10, as to partial disability, and section 11 (b). In both cases the

start is made at the average weekly wage at the time of injury.

"The body of section 11 (e) provides a method of determining the percentage or degree of impairment of earning capacity. As construed in the *Trask Case,* it makes changes in labor and wage conditions factors in finding the 'proportionate extent' of impairment. It does not affect the first determination of the basic figure. It operates merely to find the percentage to reduce it. Where continued incapacity to work in the employment at the time of injury is total, there is no occasion for using any rule to find the percentage of impairment. The rule in the *Trask Case* is applicable only on partial incapacity in such employment."

In *Roxbury* v. *Weidman Lumber Co.,* 268 Mich. 596, plaintiff, a millwright, sustained a dislocation of his left shoulder and fracture of his left leg. Later he returned to the same employ; his leg was stiff but, by being favored with the assistance of another millwright, he was able to hold his job and received the same wages as his fellow millwright. In this case we said:

"At the time plaintiff was injured his average weekly wage was $27. At the time of the hearing, now under review, his average weekly wage was $17.40. The weekly compensation of $6, awarded, 'when added to his wage-earning capacity after the injury in the same * * * employment,' does 'not exceed his average weekly earnings at the time of such injury.' Plaintiff's injuries now materially lessen his earning capacity as a millwright. That he cannot now perform the full duties of a millwright is conceded. Wages of millwrights may be less now than in 1928, but the statute, in designating the wage at the time of injury and constituting such

the basic figure permits no consideration of a general wage decrease.''

In the case at bar, plaintiff was engaged in skilled employment at the time of his injury with fixed wages of $48 per week and when he returned to work at similar employment he was only able to earn $37.44 per week. The award of $10.56 per week when added to his wage-earning capacity after the injury does not exceed his average weekly earnings at the time of such injury.

The award is affirmed, without costs.

FEAD, C. J., and NORTH, WIEST, BUTZEL, BUSHNELL, POTTER, and CHANDLER, JJ., concurred.