## DALTON v CANDLER-RUSCHE, INC

1. Workmen's Compensation—Computation of Benefits—Statutes.

   A formula used by the Workmen's Compensation Appeal Board in determining benefits payable to a partially-disabled worker who later became totally disabled because of a nonwork-related heart attack is not arbitrary but conforms to the statute which fixes the method for determining appropriate compensation, even though the use of such a formula effectively disenfranchises the claimant from any benefits because of the inflationary economic trend which allowed him to earn more wages after his partially-disabling industrial injury than he had earned before the injury (MCLA 412.10).

2. Workmen's Compensation—Computation of Benefits—Actual Wages—Earning Capacity.

   A partially-disabled claimant's actual wages is an appropriate measuring device for determination of his earning capacity for computation of workmen's compensation.

3. Workmen's Compensation—Partial Disability—Total Disability —Nonwork-Related Injury—Computation of Benefits.

   An employee who is partially disabled by an industrial accident and subsequently is totally disabled by an independent intervening event is not thereby entitled to an increase in the amount of weekly benefits; therefore, the Workmen's Compensation Appeal Board properly excluded from the computation of benefits a claimant's lack of earnings after he had suffered a nonwork-related heart attack some three years subsequent to the partially-disabling hand injury which was the basis for his claim.

Appeal from Workmen's Compensation Appeal Board. Submitted June 18, 1975, at Detroit. (Docket No. 21673.) Decided October 27, 1975.

Reference for Points in Headnotes

[1–3] 58 Am Jur, Workmen's Compensation § 281 *et seq.*

Claim by Robert J. Dalton against Candler-Rusche, Inc., and Travelers Insurance Company for workmen's compensation benefits. Benefits awarded but modified by the Workmen's Compensation Appeal Board. Plaintiff appeals by leave granted. Affirmed, and remanded.

*Dice, Sweeney & Sullivan, P. C.,* for plaintiff.

*Lacey & Jones* (by *Hayim I. Gross*), for defendants.

Before: T. M. Burns, P. J., and Quinn and M. J. Kelly, JJ.

M. J. Kelly, J. On June 19, 1967 plaintiff suffered an unquestionably work-related injury to his left hand while in the employ of defendant Candler-Rusche, Inc. Plaintiff's hourly rate was $5.06. He was employed as a piledriver which entailed a good deal of climbing. As a result of the crushing injury, full strength never returned to the hand, and plaintiff was restricted to ground work with no heavy lifting. The Workmen's Compensation Appeal Board found plaintiff partially disabled. This finding is not questioned. The issue is whether the board used the correct method to determine the amount of compensation.

MCLA 412.10; MSA 17.160,[1] provides for compensation in the amount of two-thirds the difference between the workman's pre-injury weekly wages, and the weekly wages thereafter, as follows:

---

[1] It should be noted that because of the 1967 injury date, the Workmen's Compensation Act of 1912, rather than the Workmen's Compensation Act of 1969, applies to this case. See MCLA 418.891(3); MSA 17.237(891)(3). For this reason, our opinion relies on outdated provisions. The present section can be found as MCLA 418.361; MSA 17.237(361).

"While the incapacity for work resulting from the injury is partial, the employer shall pay, or cause to be paid as hereinafter provided, to the injured employee a weekly compensation equal to 66-2/3% of the difference between his average weekly wages before the injury and the average weekly wages which he is able to earn thereafter."

During the period immediately following the accident, while plaintiff was unable to work at all, compensation benefits were paid. Thereafter, plaintiff returned to work for defendant on ground work in 1967, and was subsequently laid off. He then worked for other companies, obtaining assignments through the union hiring hall until August of 1970, when he sustained a nonwork-related heart attack. The scope of his activity throughout this period was limited by the effects of the hand injury.

After his heart attack, he once again returned briefly to work in November of 1970, but on his doctor's orders was forced to resign in December of 1970, and continued unemployed through the date of hearing below. Petition for hearing was filed seeking workmen's compensation benefits on account of the injury to plaintiff's left hand. The referee awarded plaintiff benefits, holding that after the further disability caused by the heart attack, he was entitled to receive "two-thirds of the difference between his weekly earnings and $202.40, not to exceed $75 for any week", post-injury earnings or ability to earn notwithstanding.

The appeal board modified the award by offsetting plaintiff's post-injury pre-heart attack average weekly earnings. Plaintiff says the effect of this modification was to strip him of any weekly benefits. He says that he has a hand injury which is clearly partially disabling, but that he has been

effectively disenfranchised from any benefits. And it is true.

The appeal board order is as follows:

"It is ordered, that the decision of the hearing referee in this cause shall be and it hereby is modified to find that plaintiff has been only partially disabled in his skill and for all other periods up to March 11, 1971, he is entitled to receive payment at the rate of two-thirds of the difference between his average weekly wage at the time of injury ($202.40) and his average weekly wage as of August 14, 1970, such wage or earnings to be determined by computing the average weekly wage which plaintiff earned within a one-year period preceding August 14, 1970, not to exceed $75 for any one week, and in the future payment shall be made at two-thirds of the difference between such weekly earnings as so determined and $202.40 not to exceed $75 for any one week. Further, it is found plaintiff has not sustained the loss of industrial use of his hand;

"It is further ordered, that if the parties are unable to make such determination among themselves, the matter shall be remanded to the bureau for determination of that amount, including further testimony if necessary."

The matter has not been remanded because plaintiff was granted leave to appeal to this Court on one issue thus framed:

"May the Workmen's Compensation Appeal Board arbitrarily select a period for the determination of wage earning capacity upon which to determine the presence of wage loss where there is a specific finding of partial disability on behalf of the plaintiff?"

Plaintiff characterizes the one-year back period for determining average weekly wage as arbitrary; but it is really not the one-year back period that is causing plaintiff's loss of benefits; it is inflation

and the rise in wages working in tandem from the date of his original injury. The wage of a pile driver increased from $5.06 per hour at the time of plaintiff's injury to $7.37 per hour at the time of his heart attack. Since the courts are used these days for everything else, we are now asked to devise a formula, under guise of legal interpretation, which will remedy the economic robbery of the fixed income recipient.

What would it take? It would require the assertion of two legal principles which are beyond our powers to make.

First, a declaration of this state's public policy, emanating from the remedial legislation principle, against inflationary loss of purchasing power to workmen's compensation benefit recipients.

Second, an interpretation of wage earning capacity after injury under § 11,[2] as meaning wage earning capacity after the injury established by the wage rate of an uninjured employee at the time of hearing.

This is not a new dilemma, see *Trask v Modern Pattern & Machine Co,* 222 Mich 692; 193 NW 830 (1923).

---

[2] "The weekly loss in wages referred to in this act shall consist of such percentage of the average weekly earnings of the injured employee computed according to the provisions of this section as shall fairly represent the proportionate extent of the impairment of his earning capacity in the employment in which he was working at the time of the injury, the same to be fixed as of the time of the injury, but to be determined in view of the nature and extent of the injury. The compensation payable, when added to his wage earning capacity after the injury in the same or another employment, shall not exceed his average weekly earnings at the time of such injury.

*     *     *

"In cases where there are special circumstances under which the weekly wage cannot justly be determined by applying the above provisions, an average weekly wage may be computed by dividing the aggregate earnings during the year prior to the injury by the number of days when work was performed and multiplying such daily wage by the number of working days customary in the employment, but not less than 5." MCLA 412.11; MSA 17.161.

We decline the undertaking and affirm the appeal board with the lame observation that not every inequity is unlawful. This inequity is beyond our power to correct.

The difficulty stems from the statutory scheme which requires that the weekly benefit be offset by "the average weekly wage that he is able to earn thereafter". Since the word "thereafter" does not delineate a specific time reference, the appeal board was required to establish the formula. It did so by choosing the year prior to the heart attack, August of 1970.[3] Plaintiff claims that that period is unreasonable. He does not suggest an alternative time period after the injury but urges that we ignore his earnings post-injury and pre-heart attack. He says that he was able to find employment after the accident only because of a general construction boom where all warm-bodied workers were readily employable and where wages increased rapidly. He says that in subsequent recessionary economic times, his injury made him unable to compete with able-bodied workers for fewer available jobs, and that his wage increase after the accident is incidental and does not necessarily mean that he suffered no loss.

Defendant rejoins that the period used by the board is reasonable. It claims that it would be improper to gauge his entitlement by plaintiff's lack of earnings after his heart attack because to do so would require the employer to pay compen-

---

[3] Apparently the appeal board relied by analogy on the "one year back" approach presently found in MCLA 418.833; MSA 17.237(833). The statute in effect at the time of plaintiff's accident, MCLA 413.14; MSA 17.188, is to the same effect, stating in pertinent part:

"If payment of compensation is made (other than medical expenses) and an application for further compensation is later filed with the commission, no compensation shall be awarded by the commission for any period which is more than 1 year prior to the date of the filing of such application."

sation for the nonwork-related heart attack. Defendant also argues that plaintiff's economic theories are unsubstantiated in the record. Defendant says that upon remand, plaintiff will be able to prove the economics of his situation, and show any real wage loss that he may have suffered.

We find that the appeal board was required to administratively determine an appropriate time period for computing the amount of weekly wages after the accident. The legislation allows a flexible approach. We find no error in the fact that the one-year period used is not specified in the statute. We find that the mathematical approach used by the board conforms to the statute. The Supreme Court has said, "the actual earning of wages establishes an earning capacity". *MacDonald v Great Lakes Steel Corp,* 274 Mich 701, 703; 265 NW 776 (1936). Although the appeal board was required to consider capacity to earn, its measuring device of actual earnings is appropriate.

It was proper for the board to exclude from the computation plaintiff's lack of earnings after the heart attack. To do otherwise would allow, or at least potentially allow, an increase in benefits for an intervening nonwork-related disability. This is not permissible. *Dunavant v General Motors Corp,* 325 Mich 482; 38 NW2d 912 (1949).

In legal contemplation, the occurrence of an independent intervening event does not serve to diminish the amount of weekly benefits, even if the intervening event is itself totally disabling. *Sims v R D Brooks, Inc,* 389 Mich 91; 204 NW2d 139 (1973). Conversely, where the employee is partially disabled by an industrial accident and an independent intervening event totally disables him, there is no increase in the amount of weekly benefits. *Pigue v General Motors Corp,* 317 Mich

311; 26 NW2d 900 (1947), *Dunavant v General Motors Corp,* 325 Mich 482; 38 NW2d 912 (1949).

We defer consideration of plaintiff's additional argument that the partial disability formula distorts the true wage loss. No true wage loss has yet been established. The appeal board ordered the case remanded for that purpose, and it has not yet been accomplished. Plaintiff will have an opportunity on remand to show his weekly wages and document his argument that the apparent increase is a distortion, and that he does in fact have an existing residual real wage loss. If plaintiff can show that, as a matter of economic reality, his capacity to earn is not reflected by the mathematical result of the appeal board's order, then we will reach the question of whether he is entitled to additional compensation. There is no denying that plaintiff's argument appears to conform to economic reality. On the other hand, the Supreme Court has said, "Presumably and actually, an employee can be injured, disabled to a degree, and yet suffer no weekly wage loss because he is shown to be able to earn an amount equal to or greater than that which he was earning at the time of his injury". *Pulley v Detroit Engineering & Machine Co,* 378 Mich 418, 423; 145 NW2d 40 (1966).

Affirmed and remanded. Costs to defendant.