BARRETT v BOHN ALUMINUM & BRASS COMPANY

1. WORKMEN'S COMPENSATION—APPEAL AND ERROR—APPEAL BOARD—
   FINDINGS OF FACT—LIMITED REVIEW—FRAUD—STATUTES.
   Review by the Court of Appeals of the findings of facts by the
   Workmen's Compensation Appeal Board is limited to whether
   the board applied the correct legal standard, except in cases
   where fraud is involved (MCLA 418.861; MSA 17.237[861]).

2. WORKMEN'S COMPENSATION—PARTIAL DISABILITY—WEEKLY COMPEN-
   SATION—COMPENSATION FORMULA—STATUTES.
   An employee who is partially incapacitated due to a work-related
   injury shall be entitled to receive from the employer responsi-
   ble for the injury a weekly compensation equal to 2/3 of the
   difference between the employee's average weekly wages before
   the injury and the average weekly wages he is able to earn
   thereafter (MCLA 418.361[1]; MSA 17.237[361] [1]).

3. WORKMEN'S COMPENSATION—VOCATIONAL REHABILITATION BENEFITS
   —PARTIAL DISABILITY—STATUTORY PROCEDURAL REQUIREMENTS
   —STATUTES.
   Vocational rehabilitation benefits are not limited to those injured
   employees who are totally disabled, but are also available to
   those who are only partially disabled; however, to receive the
   vocational rehabilitation benefits, the injured employee must
   comply with certain statutory requirements and petition the
   director of the workmen's compensation bureau for an evalua-
   tion and for an order for rehabilitation services (MCLA
   418.319[1]; MSA 17.237[319] [1]).

4. WORKMEN'S COMPENSATION—AWARD—INTEREST RATE ON AWARD.
   The interest applicable to a workmen's compensation award is
   5% per annum.

Appeal from Workmen's Compensation Appeal

REFERENCES FOR POINTS IN HEADNOTES
[1] 82 Am Jur 2d, Workmen's Compensation §§ 616, 631.
[2] 82 Am Jur 2d, Workmen's Compensation § 338 *et seq.*
[3] 82 Am Jur 2d, Workmen's Compensation § 387.
[4] 82 Am Jur 2d, Workmen's Compensation § 579.

Board. Submitted March 3, 1976, at Grand Rapids. (Docket No. 24899.) Decided June 24, 1976. Leave to appeal applied for.

Claim by Danny L. Barrett against Bohn Aluminum and Brass Company for workmen's compensation benefits. Benefits awarded but modified by the Workmen's Compensation Appeal Board. Defendant appeals by leave granted. Affirmed in part, reversed in part and remanded.

*McCroskey, Libner, Van Leuven, Kortering, Cochrane & Brock,* for plaintiff.

*Cholette, Perkins & Buchanan* (by *Edward D. Wells*), for defendant.

Before: DANHOF, P. J., and D. E. HOLBROOK and ALLEN, JJ.

D. E. HOLBROOK, J. On June 11, 1969, plaintiff was employed by the defendant as a common laborer at the rate of $2.99 per hour. On that date, the plaintiff was working on a punch press which was activated by a foot trip switch. As he was removing a piece of metal from the die, plaintiff lost his balance and attempted to grab the machine in order to prevent himself from falling. His foot accidentally tripped the switch causing the press to descend, amputating a portion of all four fingers on his left hand. At the time he was injured, plaintiff had just completed his junior year in high school. He testified that during the school year he worked nights and attended school during the day. During the summer months he was permitted to transfer to the day shift and was on the day shift at the time he was injured. Plaintiff was off work due to the injury from June 11, 1969, through September 14, 1969, and during

this period he received compensation. He returned to work on September 15, 1969, working evenings while attending high school classes during the day. Upon returning to work for the defendant, plaintiff performed the same duties that he had performed prior to the accident. Plaintiff was only able to do so, however, with great difficulty. He continued to be employed by defendant for approximately three months, and during this time he was unable to work a regular 40-hour week because of the pain in his hand. Plaintiff completed his high school education, and did not work again until September 1970. At that time, he was employed by a different company at a lower rate of pay. He still experienced difficulty and pain with his injured hand at his new job. He remained at the new job until September 17, 1971, at which time he terminated his employment and enrolled as a student at Ferris State College. There, plaintiff sought training in the field of optical technology. On January 27, 1973, the hearing referee rendered his decision in this matter. He found that the plaintiff had been injured while employed by the defendant and ordered the defendant to pay compensation to the plaintiff at the rate of $69 per week from September 18, 1971 through January 18, 1972. Defendant was also ordered to pay the plaintiff $10 per week for partial disability commencing on October 20, 1970, through February 1, 1971, and $10 a week from February 2, 1971, through September 17, 1971. The referee found that defendant had already properly paid plaintiff for his specific loss. Finally, the referee found that the plaintiff suffered sufficient residual disability to warrant rehabilitation and ordered the defendant to pay the reasonable and necessary costs thereof.

The referee's decision was appealed to the Work-

men's Compensation Appeal Board, and the board affirmed the referee's decision with certain minor modifications. The board found that plaintiff was partially disabled, but modified the referee's award of compensation for partial disability. The board found that the plaintiff suffered a wage loss beyond the specific loss period while employed by the second above-mentioned company, and that this wage loss was $14 per week from October 20, 1970, through February 1, 1971. The wage loss suffered by the plaintiff from February 2, 1971, through September 17, 1971, was found to be $10 a week. The board then reduced the award for partial disability to $9.33 per week from October 20, 1970, through February 1, 1971, and to $6.67 per week from February 2, 1971 through September 17, 1971. The board also ordered the defendant to pay the plaintiff compensation for partial disability at the rate of $69 per week from September 18, 1971, through January 18, 1972; during this period, plaintiff had voluntarily terminated his employment and was a full-time student.

With respect to the referee's decision ordering the defendant to pay the reasonable and necessary costs which were incurred by the plaintiff while he was enrolled at Ferris State College, the board affirmed the decision of the referee. The board modified the referee's order for vocational rehabilitation benefits, and limited them to a period of 52 weeks. However, the board indicated that plaintiff could petition for vocational rehabilitation benefits for an additional 52 weeks upon the expiration of the first 52 weeks.

On September 3, 1975, this Court granted defendant's application for leave to appeal.

Defendant first urges that the board erred when it held that the plaintiff, who had portions of all

four fingers on his left hand amputated, was partially disabled. Findings of fact by the appeal board are, absent fraud, conclusive on this Court. MCLA 418.861; MSA 17.237(861). In the absence of fraud, this Court's review is limited to whether the board applied the correct legal standard, *Medacco v Campbell, Wyant & Cannon Foundry Co*, 48 Mich App 217; 210 NW2d 360 (1973). Since there are no allegations of fraud, and since it does not appear that the board applied an incorrect legal standard, we decline to reverse the board on this issue.

Defendant next urges that even if the board did not err when it held that the plaintiff was partially disabled, the board did err when it ordered the defendant to pay plaintiff the full amount of compensation benefits for a period of time subsequent to the time that the plaintiff voluntarily terminated employment and enrolled in college. We have already determined that plaintiff was partially disabled. MCLA 418.361(1); MSA 17.237(361)(1), provides in part:

"While the incapacity for work resulting from the injury is partial, the employer shall pay, or cause to be paid to the injured employee a weekly compensation equal to 2/3 of the difference between his average weekly wages before the injury and the average weekly wages which he is able to earn thereafter."

The board found that the plaintiff's average weekly wages at the time he was injured were $119.60. The board also found that the average weekly wages which the plaintiff was able to earn subsequent to the injury was $105.60 from October 20, 1970, through February 1, 1971, and $109.60 from February 2, 1971, through September 17, 1971. It thus appears that the largest difference in

evidence between the amount of wages plaintiff was able to earn before his injury and the amount of wages he was able to earn after his injury was $14. The board nevertheless ordered that partial disability compensation benefits be paid to the plaintiff at the rate of $69 per week from September 18, 1971, through January 18, 1972. In so ordering, the board erred. The board should have determined precisely what amount plaintiff was capable of earning during this period, and then allowed plaintiff compensation at the rate of 2/3 the difference between that amount and the amount he was able to earn before his injury. Since plaintiff had already established that his post-injury average weekly wages were $109.60, it appears he was only entitled to $6.67 per week during the period in question. However, if new evidence is introduced on remand, the board is free to revise that amount.

Defendant next argues that, since plaintiff has been classified as partially disabled rather than totally disabled, he is not entitled to receive any vocational rehabilitation benefits. MCLA 418.319(1); MSA 17.237(319)(1) reads in part as follows:

"When as a result of the injury he is unable to perform work for which he has previous training or experience, he shall be entitled to such vocational rehabilitation services, including retraining and job placement, as may be reasonably necessary to restore him to useful employment."

The section then goes on to provide that if such services are not voluntarily offered the director, on his own motion or upon application of the employee or other interested parties, may refer the employee to a bureau-approved facility for evalua-

tion of the need for and the type of training necessary for rehabilitation. Defendant argues that an individual who is able to perform work subsequent to injury is not entitled to vocational rehabilitation benefits. We believe defendant to be wrong, and we adopt the position of the board on this issue:

"We have found that because of the residual effects of plaintiff's injury he remains partially disabled in the field of common labor. Does such a finding preclude the ordering of vocational rehabilitation? We think not. Keeping in mind the basic purpose of the Act, it seems unthinkable that the Legislature meant to limit vocational rehabilitation to those *totally* unable to perform work for which they had previous training or experience. Can it be said about an injured worker who retains only a partial ability to perform in his prior skill but is unable to truly compete with the able-bodied that he is *able* to perform such work? Did the Legislature intend to deny the opportunity for vocational rehabilitation to workers who because of their injuries are likely to be the last hired and the first fired? Are these workers to be left teetering on the brink of society's economic scrap heap, only to be pushed over the brink every time the economy turns down? We think that the answer to all these questions is no. It is our conclusion that the Legislature used the term 'unable to perform' in terms of the economic result of a physical or mental impairment rather than in purely mechanical terms. Such an interpretation is entirely consistent with the wage loss nature of our Act.

\* \* \*

"The entire thrust of vocational rehabilitation is to retrain the injured employee so that he will have the skills necessary to again compete with the able-bodied in the economic marketplace. Defendant should be pleased with plaintiff's efforts to gain the skills which will permit plaintiff to again compete with the able-bodied and, thus, reduce the potential for long term liability. As things stand now, it is likely that plaintiff

will continue having periods of compensable wage loss for the rest of his life. The costs of vocational rehabilitation will increase defendant's short-run costs but result in a reduction over the long run." *(Emphasis in original.)*

While we believe that the plaintiff in this case was not precluded from receiving rehabilitation benefits under the statute, it does not appear that the proper statutory procedures were followed in granting such benefits. Therefore, on remand, the plaintiff or another interested party will be required to petition the director for an evaluation and an order for rehabilitation services. Under the facts in this case, it may be proper for the director on his own motion to make the referral.[1]

Finally, the appeal board was in error when it awarded 6% interest on the compensation due to the plaintiff. The interest applicable to a workmen's compensation award is 5% per annum. *Solakis v Roberts,* 395 Mich 13; 233 NW2d 1 (1975).

Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

---

[1] On remand, if it is determined the plaintiff is entitled to receive rehabilitation benefits, this does not prelude an award under MCLA 418.361; MSA 17.237(361), for which the plaintiff might otherwise qualify. Where the employee is unable to perform work for which he has been previously trained, MCLA 418.319(1); MSA 17.237(319)(1) seeks to encourage him to get additional training "to restore him to useful employment". This encouragement would be diminished if at the same time the employee was denied benefits to which he would otherwise be entitled under MCLA 418.361; MSA 17.237(361). Therefore, in furtherance of the apparent legislative purpose, the plaintiff may receive both benefits.