SOBOTKA v CHRYSLER CORPORATION (ON REHEARING)

Docket No. 139553. Submitted November 13, 1991, at Detroit. Decided
March 1, 1993, at 10:05 A.M. Leave to appeal sought.

Mark Sobotka, an employee of the Chrysler Corporation, sus-
tained a work-related injury that the Workers' Compensation
Appeal Board subsequently determined resulted in a partial
disability. The board awarded Sobotka a weekly benefit of $153,
which it erroneously determined was two-thirds of his preinjury
average weekly wage of $283.30. The Court of Appeals peremp-
torily reversed and remanded, directing the board to calculate,
in dollars and cents, the extent of the impairment in earning
capacity. The board did not do so, but again awarded a weekly
benefit of $153. The Court of Appeals peremptorily reversed
and remanded, again directing the board to calculate the
impairment in earning capacity. The board calculated the
impairment to be "two-thirds of $283.30 or $153." The Court of
Appeals, in a peremptory order, affirmed the board's determi-
nation that the partial disability was two-thirds of $283.30, but
vacated the remainder of the board's order, noting that two-
thirds of $283.30 is not $153, but $188.87, and that pursuant to
MCL 418.361(1); MSA 17.237(361)(1), the weekly benefit may
not exceed $126, two-thirds of the loss in average weekly wage
(⅔ ×$188.87). The Supreme Court, in lieu of granting leave to
appeal, vacated the Court of Appeals order and remanded to
the Court of Appeals for plenary consideration. 437 Mich 953
(1991). The Court of Appeals, WEAVER, P.J., and MARILYN
KELLY, J. (MICHAEL J. KELLY, J., dissenting in part), in an
unpublished opinion per curiam decided June 29, 1992 (Docket
No. 139553), affirmed the board's weekly benefit award of $153,
but remanded to the board for a determination whether Sobot-
ka's wife was properly a dependent for purposes of the award.
The Court of Appeals subsequently granted a rehearing.

On rehearing, the Court of Appeals held:

1. Where disability is partial, Trask v Modern Pattern &
Machine Co, 222 Mich 692 (1923), and Thayer v Britz, 234 Mich

REFERENCES
Am Jur 2d, Workers' Compensation §§ 379, 381, 395, 418.
See ALR Index under Workers' Compensation.

645 (1926), require that the proportionate extent of impairment of earning capacity in the field of employment also be determined.

2. MCL 418.361(1); MSA 17.237(361)(1), at the time pertinent to this case, set the weekly benefit for a partial disability at no more than two-thirds of the loss in average weekly wage.

3. In this case, the Workers' Compensation Appeal Board determined Sobotka's loss in average weekly wage was two-thirds of his preinjury weekly wage of $283.30, i.e., $189. Pursuant to § 361, his weekly benefit cannot exceed two-thirds of $189, i.e., $126. Chrysler must pay $126 in weekly benefits, less any applicable credit for wages actually earned, MCL 418.371(1); MSA 17.237(371)(1). All past due benefits are to be paid with interest at ten percent, MCL 418.801(6); MSA 17.237(801)(6). The dependency of Sobotka's wife need not be addressed because the $126 weekly benefit falls within the minimum and maximum allowable rates of compensation.

Affirmed as modified.

MARILYN KELLY, J., dissenting, stated that the board's award of $153 in weekly benefits should be affirmed in deference to the board's expertise.

WORKERS' COMPENSATION — PARTIAL DISABILITY — IMPAIRMENT OF EARNING CAPACITY.

A determination by the Bureau of Workers' Disability Compensation of a worker's partial disability must include a calculation of the extent of impairment in earning capacity in the field of employment; the weekly benefit for such a disability may not exceed the maximum benefit expressed as a percentage of the loss of earning capacity, as provided under § 361(1) of the workers' compensation act (MCL 418.361[1]; MSA 17.237[361] [1]).

*Woll, Crowley, Berman, Olsman & Nolan, P.C.* (by *Sandra L. Ganos*), for the plaintiff.

*Lacey & Jones* (by *Gerald M. Marcinkoski*), for the defendant.

ON REHEARING

Before: WEAVER, P.J., MICHAEL J. KELLY and MARILYN KELLY, JJ.

WEAVER, P.J. The motion for rehearing is granted and the unpublished opinions previously released on June 29, 1992 (Docket No. 139553), in this matter are withdrawn and are replaced by the accompanying expression of the Court's view.

Plaintiff Mark Sobotka was injured in the course of his employment as an inspector at a Chrysler Corporation plant on May 26, 1978. An automobile moving along the production line collided with a stationary vehicle on which plaintiff was performing an inspection, striking his legs above and below the knees.

In its original August 8, 1986, decision, the Workers' Compensation Appeal Board found plaintiff partially disabled, but awarded him full benefits to the extent of two-thirds of the difference between his actual postinjury wages and the wages he was earning at the time of injury.

On December 23, 1986, this Court peremptorily reversed and remanded to the appeal board, directing the board to determine the extent to which plaintiff's earning capacity had been impaired, with instructions to fix the amount, in dollars and cents, of the weekly benefits accordingly due. This order was based on the board's unappealed finding of partial disability, and cited in support *Thayer v Britz,* 234 Mich 645; 209 NW 50 (1926), and *Barrett v Bohn Aluminum & Brass Co,* 69 Mich App 636, 641; 245 NW2d 147 (1976).

On remand, the appeal board again awarded benefits equal to two-thirds of the difference between the wages plaintiff was earning before injury and after injury, his postinjury earnings at that time being zero. The board found that "there is no evidence in the record to indicate that plaintiff has been able to find suitable work within his restrictions since he was laid off on January 17,

1979." Again this Court peremptorily reversed, citing *Thayer v Britz, supra,* and *Trask v Modern Pattern & Machine Co,* 222 Mich 692, 697-699; 193 NW 830 (1923). That order directed the appeal board again to calculate, "in dollars and cents, the proportionate impairment of plaintiff's earning capacity attributable to his partial disability," and noted that "plaintiff's post-injury earnings are merely one factor to be considered; the Appeal Board's opinion and order of July 31, 1987 treats those post-injury earnings as the sole factor of relevance, contrary to the analysis set forth in *Trask, supra."*

On second remand, the appeal board reviewed the medical and lay testimony, juxtaposing it with plaintiff's inability to find employment within his restrictions since the date of injury, leading the board to the following conclusion:

> Based upon the fact that plaintiff has not been able to earn any wages after his January 17, 1979 layoff, the medical testimony of Dr. Larkin, Dr. Goldberg and Dr. Weisman concerning the nature and extent of plaintiff's injuries, we find that plaintiff does suffer from a disability which severely limits his ability to engage [in] post-[injury] employment. We also find that plaintiff's proportionate impairment in earning capacity attributed to his partial disability is two-thirds of $283.30 or $153 per week for two dependents.

That benefit rate is identical to the benefit rate awarded in the appeal board's two prior orders.

It is the last quoted decision of the appeal board that is before us for our determination. Initially, this Court again entered a peremptory order, affirming the determination that plaintiff's partial disability is two-thirds of $283.30. However, the remainder of the appeal board's order was vacated on the basis of the following observation:

> Two-thirds of $283.30 is not $153, but $188.87. Pursuant to § 361(1), plaintiff's weekly disability benefit may not exceed two-thirds of his loss in average weekly wage, or $125.91. On remand, the Appeal Board shall determine plaintiff's benefit level for two dependents, not to exceed $125.91.

The Supreme Court, however, vacated that order and remanded to this Court for plenary consideration. 437 Mich 953 (1991). We amend in part and affirm.

Fundamentally, this case proceeds on the basis that plaintiff is only partially disabled. Plaintiff has never sought to appeal the initial finding of partial disability, and when defendant attempted to allege total disability after first remand, this Court, in that respect, denied defendant's second application for leave to appeal "for lack of merit in the grounds presented." This Court's first two orders have not been vacated by the Supreme Court, which vacated only this Court's third peremptory order in the case, that of July 26, 1989. *Sobotka v Chrysler Corp,* 437 Mich 953 (1991). In other circumstances, the Supreme Court has vacated all prior orders of this Court, e.g., *Murdock v Michigan Health Maintenance Organization,* 434 Mich 851 (1990) ("[t]he decisions of the Court of Appeals are vacated and the case is remanded . . . "). While at the Supreme Court level there is no law of this case, *Raven v Wayne Co Bd of Comm'rs,* 399 Mich 585, 588, n 1; 250 NW2d 477 (1977) (final paragraph), in contrast, in this Court our prior decisions, to the extent adjudicative facts remain substantially the same, do represent the law of the case, which we are not free to modify, the time for rehearing of those orders having expired. *Johnson v White,* 430 Mich 47, 53; 420 NW2d 87 (1988).

Under the doctrine of law of the case, therefore,

plaintiff is partially disabled, and the decisions in *Trask, Thayer,* and *Barrett, supra,* must be examined to determine how plaintiff's benefit rate shall be calculated.

The appeal board, in this and in similar cases, recently joined by the appellate commission, takes the position that *Trask* and *Thayer* are either no longer good law, or, at most, apply only to situations in which the employee, after injury, can resume the identical job in which the employee was engaged at the time of injury. If the injury in any way limits the ability of the employee to do the same job, then on this theory partial disability becomes irrelevant, and the only limitation on employer liability is the employee's dependency rate, the maximum rate set by statute, the average weekly wage, and any actual wages the employee is able to earn after injury, which become a setoff under § 371(1) of the Workers' Disability Compensation Act, MCL 418.371(1); MSA 17.237(371)(1).

This focus on the "job" in which the employee was working at the time of injury, rather than on the general field of employment, is erroneous. *Miller v S Fair & Sons,* 206 Mich 360, 365; 171 NW 380 (1919). Indeed, wherever the statute deals with compensating the injured employee for wage loss, the focus is on the "employment," and not the particular job, that was being performed at the time of injury. Thus, § 371(1) of the Workers' Disability Compensation Act of 1969, unchanged in relevant part from its predecessor, 1927 PA 376, MCL 412.11; MSA 17.161, provides:

> The weekly loss in wages referred to in this act shall consist of the percentage of the average weekly earnings of the injured employee computed according to this section as fairly represents *the*

*proportionate extent of the impairment of the employee's earning capacity in the employments covered by this act in which the employee was working at the time of the personal injury.* The weekly loss in wages shall be fixed as of the time of the personal injury, *and determined considering the nature and extent of the personal injury.*

This language, which goes back to the original Workmen's Compensation Act of 1912, provides the basis for the later holdings in *Trask* and *Thayer* regarding partial disability.

In 1927 PA 376, the Legislature added the last sentence of what is now § 371(1) to what was then § 11(e) of the act, creating a credit for actual wages earned by the employee after the injury, irrespective of the nature of the employment in which those earnings are generated. This statutory offset appears to have eliminated most arguments, at least at the appellate level, over partial disability.[1]

[1] The dissent urges us to defer to the expertise of the agency charged with interpreting and administering the statute. This principle of administrative law jurisprudence applies only to longstanding interpretations by an agency of its engendering legislation. There is no evidence that the appeal board's interpretation of the effect of "partial disability" vis a vis *Trask* and *Thayer* is longstanding or invariant; so far as we can determine, until the *Trask-Thayer* doctrine was resurrected by defense counsel in this very case, the board had not addressed the issue for six decades. The administrative interpretation is thus not entitled to great weight, *Magreta v Ambassador Steel Co (On Rehearing),* 380 Mich 513, 519; 158 NW2d 473 (1968); *Stratton-Cheeseman Management Co v Dep't of Treasury,* 159 Mich App 719, 724; 407 NW2d 398 (1987). And, even if the administrative construction is longstanding and invariant, it cannot overcome a logical reading of the statute. *Lasher v Mueller Brass Co,* 392 Mich 488; 221 NW2d 289 (1974); *Majurin v Dep't of Social Services,* 164 Mich App 701; 417 NW2d 578 (1987); *Stratton-Cheeseman, supra.* The judicial interpretation always takes precedence. *Murphy v Michigan,* 418 Mich 341; 343 NW2d 177 (1984); *Lakeshore Bd of Ed v Grindstaff,* 177 Mich App 225; 441 NW2d 777 (1989).

Nor are we persuaded by the contention, perhaps accurate, that to "apply *Trask* and *Thayer* to the facts of this case is to require a significant change in the practice of workers' compensation law." If the practice developed of ignoring the *Trask-Thayer* doctrine, that is hardly sanction for continuing to do so once the issue is properly

But the creation of this offset neither eliminated the concept of partial disability nor the statutory language on which the standards for determining partial disability were first predicated. Neither *Trask* nor *Thayer* has been overruled by the Supreme Court, nor are we able to find any language in the legislation, then or now,[2] that undermines the core of the *Trask* doctrine.

However, in applying *Trask,* it is important to focus on the employment in which the employee was engaged at the time of injury. If the employee was engaged in skilled employment, and is totally disabled in skilled employment but only partially disabled with respect to other employments, full benefits must be paid, irrespective of postinjury wage earning capacity in some other field of employment. *MacDonald v Great Lakes Steel Corp,* 268 Mich 591, 594-595; 256 NW 558 (1934). In *MacDonald,* the plaintiff was a carpenter who became totally disabled from carpentry work on account of a work-related injury. He was thereafter provided unskilled employment by the same employer as a watchman. The Supreme Court held *Trask* inapplicable to that situation, given total disability in the employee's skilled employment as a carpenter, notwithstanding wage-earning capacity in some new field of employment.

This carried forward the doctrine of *Foley v Detroit United Railway,* 190 Mich 507, 515; 157 NW 45 (1916), and *Geis v Packard Motor Car Co,* 214 Mich 646; 183 NW 916 (1921), in both of which

raised. To the assertion, "But we've always done it this way," we can only respond, "Then you have been doing it incorrectly all along." See *People v Casey,* 411 Mich 179; 305 NW2d 247 (1981). Another panel said as much in *Juneac v ITT Hancock Industries,* 181 Mich App 636; 450 NW2d 22 (1989).

[2] A possible exception might be MCL 418.301(5)(6); MSA 17.237(301) (5)(6), applicable to injuries occurring after the March 31, 1982, effective date of 1981 PA 200. We choose, however, to express no opinion at this time.

the respective plaintiff suffered total disability as a result of an injury in the course of employment in a skilled trade. Later acquisition of a new skill—before the offset for actual earnings, irrespective of the field of employment, by virtue of 1927 PA 376 —was in those cases held irrelevant to the employee's right to a continuing award of benefits for loss of wage-earning capacity in the original field of skilled employment.

In the present case, the appeal board failed to determine whether plaintiff was engaged in skilled or unskilled employment. However, that is only a background issue; the appeal board has now determined, without objection from plaintiff, that the proportionate extent of his impairment in the field of employment in which he was engaged at the time of injury is two-thirds. The appeal board appears to have taken into consideration plaintiff's efforts, and lack of success, in obtaining substitute employment, which is, as suggested in this Court's vacated peremptory order of July 26, 1989, previously discussed, a relevant, but not controlling, consideration. *Roxbury v Weidman Lumber Co,* 268 Mich 596; 256 NW 560 (1934); *Langkill v Robins Conveying Belt Co,* 279 Mich 81, 86; 271 NW 560 (1937). The fact that plaintiff has not found new employment is not controlling, because:

"The applicability of § 361 does not hinge on whether the employee has actually returned to some form of work. Section 361(1) refers to 'the after tax average weekly wage which the injured employee is able to earn after the personal injury.' It includes not only wages actually earned after the injury, but also any the employee has the capacity to earn. *Frammolino v Richmond Products Co,* 79 Mich App 18, 26-27; 260 NW2d 908 (1977). The Michigan Supreme Court has ruled that to hold otherwise would encourage malingering. Compensation is not a pension. *Hood v Wyandotte Oil & Fat Co,* 272 Mich 190, 192; 261 NW

295 (1935)." [*Juneac v ITT Hancock Industries,* 181 Mich App 636, 641; 450 NW2d 22 (1989).][3]

We therefore affirm the appeal board's factual determination, as being supported by at least the requisite scintilla of evidence, Const 1963, art 6, § 28; MCL 418.861; MSA 17.237(861), that the proportionate extent of plaintiff's earning capacity, in light of all relevant factors, is two-thirds of his average weekly wage at the time of injury. As the average weekly wage at the time of injury was $283.30, the two-thirds average weekly wage loss as determined by the appeal board translates to $189.[4] Pursuant to § 361(1), plaintiff's weekly disability benefit may not exceed two-thirds of his loss in average weekly wage, or $126.

The Bureau of Workers' Disability Compensation, under the auspices of the Legislative Service Bureau of the Department of Labor, publishes an annual paperback book that includes a current version of the Workers' Disability Compensation Act of 1969, administrative rules adopted thereunder, and a set of tables, one of which shows weekly compensation rates, maxima and minima, at various dependency levels for dates of injury occurring

---

[3] The dissent contends that the "majority opinion requires opposing experts to testify concerning jobs available within the injured employee's limitations. It requires the parties to search for an abstract residual wage-earning capacity which will tend to remain at best elusive." Irrespective of the fact that equivalent proof problems attend most personal injury litigation when the question of damages is addressed, and overlooking the fact that a similar calculus is now codified under amendments of § 301 of the WDCA, particularly § 301(5)-(8), the alternative is instead to treat every unemployed partially disabled worker as totally disabled, and to treat the fact of unemployment as the functional equivalent of unemployability for workers' compensation purposes. In terms of adverse practical consequences, we do not hesitate to prefer complicating the factfinder's job to overburdening the debit side of the workers' compensation economic ledger.

[4] Rounded off to the nearest dollar in accordance with § 371(7).

in each year beginning in 1973. As we understand the table, for this plaintiff, who was injured in 1978, the minimum benefit rate at the zero dependency level is $105; the maximum rate with five or more dependents is $171 per week. Because the $126 we have calculated as plaintiff's proper benefit level is between these numbers, it appears to us that the question of the dependency of plaintiff's wife, which was never properly determined in this case pursuant to *Day v W A Foote Memorial Hosp,* 412 Mich 698; 316 NW2d 712 (1982), will not affect plaintiff's benefit level, and is therefore not relevant. Should future events make this a relevant issue, the parties may return to the bureau for a Rule 10, 1979 AC, R 408.40(4), hearing.

The June 10, 1989, order of the Workers' Compensation Appeal Board in this cause is modified in accordance with the foregoing provisions of this opinion. The Workers' Compensation Appeal Board's determination—that plaintiff's proportionate extent of impairment of earning capacity in the employment in which he was working at the time of injury is two-thirds—is affirmed; defendant shall pay plaintiff benefits at the rate of $126 a week less any applicable credit for wages actually earned pursuant to § 371(1), until further order of the bureau. All past due benefits shall bear interest at the rate of ten per cent a year from the date each payment was due until paid, pursuant to MCL 418.801(6); MSA 17.237(801)(6).

Affirmed as modified.

MICHAEL J. KELLY, J., concurred.

MARILYN KELLY, J. *(dissenting.)* I respectfully dissent.

I disagree with the majority that *Thayer* and

*Trask*[1] control the outcome of this case. Whether these cases still have application in any workers' compensation case I need not decide. However, they are clearly inapplicable to the facts in the instant case.

In *Trask,* the injured employee was an auditor and officer manager. She received a salary of $60 per week before her injury. After recovering, she asked to return to her old job. However, due to a change in economic conditions, the job was no longer available. She later found employment with a different employer doing substantially the same work for $30 per week.

The Department of Labor and Industry Commission calculated her partial disability benefits at $30 per week, the difference between her wages when injured and her wages afterwards. The Supreme Court determined that the calculation was improper, since the Commission had made no determination of the "proportionate extent of impairment of her earning capacity in the line of her employment, as of the time of the accident." *Trask v Modern Pattern & Machine Co,* 222 Mich 692, 696; 193 NW 830 (1932). The Commission also should have examined changes in wages and general economic conditions before calculating the amount of partial disability benefits. *Id.,* 698.

In *Thayer,* the Commission found the employee to be partially-disabled but did not specify the amount of the disability award. The Supreme Court recognized that the Commission was required to compute the proportionate extent of the impairment of the employee's earning capacity as defined in *Trask.* In *Thayer,* the employee had returned to the same job in which injured.

*Trask* has been cited only eight times since it

---

[1] *Thayer v Britz,* 234 Mich 645; 209 NW 50 (1926), and *Trask v Modern Pattern & Machine Co,* 222 Mich 692; 193 NW 830 (1923).

was decided in 1923. *Thayer* has never been cited by any court. None of the cases citing *Trask* involves a factual situation similar to this case. Here, plaintiff was unable to return to his job due to his disability, and he has not found other employment.

To apply *Trask* and *Thayer* to the facts of this case is to require a significant change in the practice of workers' compensation law. For decades, the Workers' Compensation Appeal Board (currently the Workers' Compensation Appellate Commission) has interpreted the Workers' Disability Compensation Act contrary to the holding in the majority opinion. MCL 418.101 *et seq.*; MSA 17.237(101) *et seq.* Courts are required to grant great deference to an agency's interpretation of the statute it is charged with enforcing, particularly where the statute is ambiguous. *Consumers Power Co v Corporation & Securities Comm,* 326 Mich 643, 648; 40 NW2d 756 (1950); *Tagliavia v Barton Malow Co,* 185 Mich App 556, 560; 463 NW2d 116 (1990).

The sections of the Workers' Disability Compensation Act applicable to this case are ambiguous due to the use of the terms "partial incapacity,"[2] "able to earn"[3] and "employment."[4]     MCL

---

[2] A person can be partially incapacitated or disabled if he is unable to totally perform the job he was doing before he was injured. Or, a person can be partially disabled if there are some types of employment he can do but others he cannot.

[3] "Able to earn" may be interpreted to mean "actual earnings," or the wages the employee has the capacity to earn. It may also be limited to the wages the employee is able to earn in the same job in which he was injured, or be expanded to the general "field" of employment.

I was previously on a panel which held that the applicability of § 361 does not hinge on whether the employees actually returned to some form of work. *Juneac v ITT Hancock Industries,* 181 Mich App 636; 450 NW2d 22 (1989). There, I agreed that "able to earn" includes not only wages actually earned after the injury but also any the employee has the capacity to earn. *Id.,* 641. Due to the difficulty of

418.361(1); MSA 17.237(361)(1); MCL 418.371(1); MSA 17.237(371)(1). The terms have multiple meanings. I am not persuaded by the majority that they should be interpreted differently than they have been by the Appeal Board.

The holding in the majority opinion requires opposing experts to testify concerning jobs available within the injured employee's limitations. It requires the parties to search for an abstract residual wage-earning capacity which will tend to remain at best elusive.

Since *Trask* and *Thayer* were decided, the Workers' Disability Compensation Act has been amended many times. It has added a set-off for wages the employee has actually earned. MCL 418.371(1); MSA 17.237(371)(1). The act's language has provided employers with a set-off against compensation owed, regardless of the type of employment an injured employee later obtains. *MacDonald v Great Lakes Steel Corp,* 268 Mich 591, 594-595; 256 NW 558 (1934).

The majority asserts that the creation of the offset neither eliminated the concept of partial disability nor the statutory language on which the standards for determining partial disability were predicated. However, as previously indicated, the concept of partial incapacity is questionable as it relates to this case, and the statutory language is ambiguous.

I am reluctant to apply sixty-seven and seventy-year-old case law interpreting the Workers' Disability Compensation Act when the act has

proofs when an employee does not return to work, I now disagree with the *Juneac* definition and would defer to the expertise of the Appeal Board in defining "able to earn."

[4] Employment may mean the "job" at which the employee was working at the time of the injury or the general "field" of employment.

changed so radically since the case law was written. I would defer to the expertise of the Appeal Board and affirm plaintiff's disability award of $153 per week.