## AYER *v.* DEVLIN.

1. PRINCIPAL AND AGENT—CONTRACTS—ADVERTISING AGENCY.

   A writing whereby defendant, a manufacturer, contracted with an advertising firm to place defendant's advertising for the ensuing year in newspapers and magazines on an agreed commission, plaintiffs to furnish electrotypes, drawings, and to prepare advertising matter at cost and to secure for defendant the best terms obtainable from the publishers, created between the parties a contract of agency and reserved to the defendant the right to specify the amount, kind, and position of advertising matter to be published.

2. SAME—TRIAL.

   It was correct for the trial court to instruct the jury, as claimed by defendant and supported by evidence, that if the defendant ordered various advertisements to be placed in a specified position and plaintiffs failed to carry out the instructions or omitted to notify defendant that they were unable to do so, the defendant would not be liable until he was notified that the advertisements were placed out of position.

   179 MICH.—6.

3. SAME.

And where plaintiffs brought an action to recover their fees for placing advertising matter, and the defendant claimed that he had directed plaintiffs to insert the advertising matter in a position next to the reading matter in certain publications, the court did not err in holding that defendant was entitled to determine the position, but plaintiffs were entitled to recover if the jury believed their testimony, that defendant had assented to the arrangements which they had made and knew that they had been unable to secure the desired position.

4. SAME—ESTOPPEL.

Evidence reviewed and *held*, not to estop plaintiffs from recovering commissions for advertising matter not placed as defendant claimed it should have been.

5. SAME—APPEAL AND ERROR.

The verdict of the jury finding that the defendant assented to the position of the advertising matter, as arranged by the plaintiff agency, cured any error that the trial court may have committed in charging that plaintiffs could recover for advertising placed after a given date, when he had notice of the position occupied by his advertisements and to the time of discontinuing the agency.

Error to Wayne; Mandell, J. Submitted November 20, 1913. (Docket No. 37.) Decided March 26, 1914.

Assumpsit by F. Wayland Ayer and others against George Devlin for advertising commissions under a special contract. Judgment for plaintiffs. Defendant brings error. Affirmed.

*Henry B. Graves*, for appellant.

*Bowen, Douglas, Eaman & Barbour*, for appellees.

Plaintiffs are in the business of placing advertising matter in newspapers and other periodicals. Defendant for many years has done business under the name of C. S. Dent & Co., manufacturing and selling a

preparation known as "Dent's Toothache Gum." The following contract was entered into between the parties:

"Place, DETROIT, MICH.
"Date, Jan. 8th, 1903.
"MESSRS. N. W. AYER & SON,
"Philadelphia, Pa.
*"Gentlemen:*
"We hereby agree that all our advertising in newspapers and magazines shall be placed through you during one year from the date of your acceptance hereof and during each year thereafter until either you or we shall have given at least three months' written notice of desire to cancel this arrangement at the end of the then current year upon the following terms and conditions:

"You are to secure for us the best terms you can make for our advertising in the various publications used and charge to our account just what you credit each paper net.

"It is understood between us that the prices paid to publishers for our advertising shall be entirely confidential and that they will not be made known to another.

"You are to serve us as best you can in the preparation of advertisements, charging to our account any expense which may be incurred for drawing, engraving or advertisement writing.

"You are to furnish needed electrotypes and the necessary wrapping or boxes, charging the cost of same to our account.

"To the aggregate of the net charges for which provision is above made, you are to add fifteen per cent. (15%) for your service and profit.

"Expenses incurred for the carriage of electrotypes and other advertising matter are to be charged to us at net cost to you, without the addition of commission.

"It is further understood and agreed that in the event of the discontinuance of our advertising (with the consent of publishers) for any cause prior to the natural termination of contracts, the commission above provided for shall be charged upon the original contract prices and shall not be reduced because of

discontinuance. Payments to be made monthly as earned.

[Signed]  "C. S. DENT & COMPANY.
          "N. W. AYER & SON."

The parties did business under this contract for more than two years. Early in 1905, defendant determined to cause his advertisement to be placed in daily newspapers and to that end sought the advice of plaintiffs. Mr. Buchanan, plaintiffs' representative in the territory, conferred with defendant, and it was agreed that plaintiffs should start placing the matter in certain daily papers. Exactly what occurred at this interview is in sharp dispute. It is claimed by defendant that it was distinctly agreed at that time that the advertisement should be placed only in "full position." In advertising parlance this term is said to mean "at the top of a column, next to reading matter or in a broken column, the first advertisement following and next to reading matter." Buchanan flatly denies that the term "full position" was used by him in the interview. He submitted to defendant an estimated statement of the cost of the proposed advertising, but claims he told defendant that "those figures represented the best possible position obtainable in those papers."

Defendant's advertisement was a small one requiring but 2½ or 3 inches of space. Because of this fact it seems to have been agreed upon between the parties that if not placed in a prominent position it would be lost in a daily newspaper, and its beneficial effects upon defendant's business would amount to little. On the other hand, it seems to be undisputed that certain newspapers and magazines will not sell "full position" for an advertisement so small as defendant's, and that others charge from 20 to 50 per cent. increase over regular rates for "full position."

After the campaign was started, defendant noticed that his advertising matter was appearing "out of

position" in certain of the periodicals and newspapers and he wrote plaintiffs calling attention to the fact. Following this complaint and about August 17, 1905, a second interview occurred between defendant and Buchanan, and again the facts as to what occurred at that interview are in dispute.

It is defendant's claim that he agreed to waive the matter of "position" in two papers only and this upon condition that "full position" should be obtained in all others, while Buchanan testified that the matter of position was discussed only in reference to the "Hartford Times" and the "Providence Journal," and that defendant then agreed that "full position" was not worth the excess price charged and announced himself as satisfied. In any event the advertising was continued for many months during which defendant wrote several letters complaining that the advertisement was not being placed according to the agreement. In the meantime defendant made various payments on account, as follows:

|  |  |  |  |  | Credit. |  |  |
|---|---|---|---|---|---|---|---|
| November | 18, | 1905. | By | cash | .................... | $342 | 73 |
| February | 2, | 1906. | " | " | .................... | 700 | 00 |
| April | 30, | " | " | " | .................... | 500 | 00 |
| July | 2, | " | " | " | .................... | 800 | 00 |
| August | 10, | " | " | " | .................... | 500 | 00 |
| September | 19, | " | " | " | .................... | 700 | 00 |
| October | 22, | " | " | " | .................... | 700 | 00 |
| March | 1, | 1907. | " | " | .................... | 700 | 00 |
| April |  | " | " | " | .................... | 344 | 86 |

$5,287 59

On December 2, 1905, defendant again wrote plaintiffs, asserting that he was entitled to "full position" and asking a statement as to just what position he could expect. This statement was prepared December 29, 1905, and shortly thereafter, January 6, 1906, was communicated to defendant. Whereupon defendant wrote to plaintiffs the following letter:

"Jan. 15, 1906.

"MESSRS. N. W. AYER & SON,
          "Philadelphia, Pa.

"*Gentlemen:*

"We fully expected to have been able to send you a check on account, before this, but collections were very disappointing in December, and January this year has been very slow in opening up, but is now coming a little better and we are looking for a fairly satisfactory January. We will send you a check at the earliest date possible and as we advised you before, it is our intention to put this account on a cash basis, even should we be obliged to discontinue some of the advertising for a time in order to do so.

"We had a call from your Mr. Buchanan, regarding the position of our advertising in a number of the papers and note your explanation, stating that the various papers will not give position for any advertising under 3 or 4 inches. We cannot understand why such papers as the Youth's Companion, Christian Herald and Woman's Home Companion are now giving us inferior position, after having given us position next to reading matter for each and every insertion for several years past. Why this change in attitude toward our advertising?

          "Yours very truly,
          "C. S. DENT & Co., by."

Later and on February 17, 1906, defendant ordered a discontinuance of the advertisement in certain of the papers, and on March 26th, in certain others. Some advertising was, however, continued.

On October 6th, plaintiffs wrote defendant as follows:

"Dictated by F. W. A.          October 6, 1906.
"MESSRS. C. S. DENT & COMPANY,
          "Detroit, Mich.

"*Dear Sirs:*

"$3,542.88 is the amount of the balance shown in our first of October statement herewith. An early October remittance will add to our convenience and we are hoping that it will be your pleasure to make it as large as you can and further oblige,

          "Very truly yours."

To which defendant replied:

"Oct. 20th, 1906.

"MESSRS. N. W. AYER & SON,
                "Philadelphia, Pa.

"*Gentlemen:*

"We enclose herewith our check for $700.00 also debit memorandum amounting to $2,273.83. You can, of course, recall that we wrote you several times in reference to the matter of insertions of our advertisements out of position. According to our contract, made with your Mr. Buchanan, we were entitled to full position in all daily newspapers and next to reading matter in the Woman's Home Companion, Youth's Companion and Christian Herald.

"Some months ago, you advised us that you would instruct your Mr. Buchanan to call and endeavor to adjust the matter with us, but this was never done. Your Mr. Buchanan called upon us yesterday and the writer asked him if he had ever had any instructions to take up the matter with us and he stated that he had not.

"The debit memorandum, enclosed herewith, is made from our checking sheets, which we believe to be found correct.

                "Yours very truly,
                    "C. S. DENT & Co., by."

Being unable to secure an adjustment in difference, plaintiffs on October 3, 1907, terminated the contract of January 8, 1903, and later brought suit.

A judgment having been rendered against defendant in the sum of $3,801.22, he has removed the case to this court for review by writ of error.

BROOKE, J. *(after stating the facts).* Appellant discusses some 50 assignments of error under 12 separate heads:

"(1) Did the court properly construe the contract between the parties and their respective rights thereunder?

"(2) Was the charge of the court setting forth the claims of the plaintiffs regarding the contract and instructing the jury to find for the plaintiffs if they

found 'the contract was as the plaintiff claims,' erroneous?

"(3) Was the court in error in ignoring defendant's claim of an equitable estoppel and the evidence bearing thereon?

"(4) Did the court err in excluding questions regarding defendant's knowledge prior to January 6, 1906, of the inability or refusal of plaintiffs to furnish full position?

"(5) Did the court err in excluding questions propounded to the witness Buchanan as to his knowledge and good faith in his attitude towards defendant?

"(6) Did the court err in charging the jury that they might find there was no proof from which they might find an agreement relative to position in the Christian Herald, Youth's Companion and Woman's Home Companion?

"(7) Did the court err in his rulings regarding defendant's liability for advertising after January 6, 1906?

"(8) Did the court err in permitting the witness Buchanan to testify regarding plaintiffs forbearing in not charging defendant commissions on discontinued advertising, and in commenting on the testimony?

"(9) Did the court err in admitting in evidence the letter of Mr. Buchanan to plaintiffs dated August 17, 1905, and in his comments thereon?

"(10) Did the court err in refusing to admit the testimony of the witness Chapin regarding the contents of plaintiffs' check sheets?

"(11) Did the court err in his rulings upon the admissibility of testimony regarding advertising subsequent to that in controversy?

"(12) Did the court err in permitting the witness H. Eugene Wheeler to testify for plaintiffs after his deposition had been read?"

1. We are of opinion that the court properly charged that the written contract was one of agency and that it should govern so far as its terms expressed the agreement between the parties. The written contract is silent as to the amount of money to be expended and the mediums of publicity to be used. It

is clear that (under the written contract) defendant had the right to specify as to the amount and character (position) of the advertising to be done. There is no doubt that defendant and plaintiffs' agent, Buchanan, had a conference at which a plan of campaign was agreed upon. Each party seems to have remembered the agreement differently.

It is contended that the court permitted the jury to construe the contract. A careful perusal of the entire charge upon this point is, we think, a sufficient refutation of this claim. The various claims of the parties were outlined by the court and the jury were instructed to determine, from the evidence, what the actual agreement as regards "position" was and further:

"If Mr. Devlin ordered the various advertisements to be put in the various publications in full position and Ayer & Son did not place the advertisements in full position in the various publications or notify Mr. Devlin that they could not do so, then Mr. Devlin is not responsible for advertising not placed in full position until he received such notice that the advertisements were out of position."

It appears to us that the controlling issue in the case was whether in fact defendant had contracted that his advertisement should be placed in the selected newspapers in "full position" only. This issue was presented to the jury fairly and under very plain instructions. They determined the fact to be contrary to defendant's contention.

2. The next point discussed refers to clause 2 of the contract. It is contended that the sentence "You are to secure the best terms you can make for our advertising" means simply that plaintiffs should secure the lowest rates possible considering the time, space, and nature of the same, and that it conferred no power upon plaintiffs to determine position. Inasmuch as the court predicated plaintiffs' right to re-

cover upon the fact (if so determined by the jury) that defendant had not contracted for "full position," thus recognizing defendant's right to control the matter of "position" under the contract, we cannot see how defendant's rights were in any way prejudiced. Nor do we think it was improper for the court to direct the jury that plaintiffs could recover if the jury believed plaintiffs' version of the contract as to "position."

3. It is contended by defendant that the letters written by him to plaintiffs so clearly indicated his understanding that he was to have "full position" for his advertisement, that the failure of plaintiffs to at once correct his misunderstanding should now be held to estop plaintiffs from denying the contract as defendant claims to have understood it. The principles invoked are not in dispute. The question is whether they apply to the facts in this case. The communications between the parties are not limited to the correspondence. There were at least two or three personal interviews between Buchanan and defendant in the course of which the matter was discussed. What was said at these interviews was detailed to the jury by both parties. From an examination of all the correspondence and the testimony as to the interviews and in view of the fact that defendant knew from the outset that his advertisement was not appearing exclusively in "full position" and yet failed to order its discontinuance, we are of opinion that the court properly refused to instruct the jury that plaintiffs could not recover for any "misplaced" advertising, prior to a reasonable time after January 6, 1906, at which time it is admitted defendant had full knowledge as to what could be secured in the matter of "position."

4, 5, 6 require no discussion.

7. Inasmuch as defendant ordered no discontinuance of his advertisement until February 17, and March 26, 1906, we think the court properly charged

that in any event defendant would be liable for all advertising after January 6, 1906. But the matter is wholly unimportant under the determination of the jury as to what the agreement between the parties was.

The remaining assignments of error relate to the admission or rejection of evidence.

A careful examination of the record convinces us that no reversible error was in this respect committed.

The judgment is affirmed.

MCALVAY, C. J., and KUHN, STONE OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.