CENTRAL DISCOUNT COMPANY *v.*
DEPARTMENT OF REVENUE.

1. SALES—DEFINITION—ENTIRE AND ABSOLUTE TRANSFER OF THING
SOLD.

A sale is the transfer of the general or absolute, as distinguished
from a special, property in a thing, the entire and absolute
transfer of the thing sold, without reservation.

2. CONTRACTS—SALES—CONSTRUCTION—INTENT—EVIDENCE.

A particular transaction may constitute a form of transfer other
than a sale, where the essential elements of a sale are lacking
and the mere fact that the instrument evidencing the transfer
is entitled "contract of sale" is unimportant if the body of
the instrument indicates that the intention of the parties
was to enter into some other form of agreement, it being
permissible to show by extrinsic evidence that a bill of sale
that is absolute on its face is a chattel mortgage.

3. SAME—SALES—LOANS.

The court must decide according to the real nature of a
questioned contractual transaction without regard to the terms
applied to it by the parties, hence, if from all facts of the
transaction it clearly appears that what the parties called a
sale was in reality not a sale but a loan, it must be treated as
the latter.

4. TAXATION—INTANGIBLES TAX—AUTOMOBILE FINANCING PAPER.

Transactions whereby plaintiff would purchase retail instalment
sales notes secured by chattel mortgages on automobiles from
automobile dealers, indorse them over to financing company
which would supply plaintiff with sufficient funds to pay dealer,
and for payment of insurance and which was required to
sell any or all such obligations to plaintiff at a fixed discount

REFERENCES FOR POINTS IN HEADNOTES

[1] 46 Am Jur, Sales § 2.
[2–4] 46 Am Jur, Sales § 9; 10 Am Jur, Chattel Mortgages § 7.

rate, which obligations were guaranteed by plaintiff, and after sale of repossessed cars balance was payable to the financing company, constituted evidence that the parties intended to make loans, not sales, hence, the plaintiff was subject to the intangibles tax as to such obligations (CL 1948, § 205.131 *et seq.*).

Appeal from Ingham; Salmon (Marvin J.), J. Submitted January 6, 1959. (Docket No. 4, Calendar No. 47,517.) Decided February 20, 1959.

Petition to State Board of Tax Appeals by Central Discount Company, a Michigan corporation, challenging Department of Revenue assessment of intangibles tax. Redetermination made of no tax owing. On further proceedings in circuit court, order reversed, determining tax liability. Plaintiff appeals. Affirmed.

*Bernard F. Zinn,* for plaintiff.

*Paul L. Adams,* Attorney General, *Samuel J. Torina,* Solicitor General, *T. Carl Holbrook* and *William D. Dexter,* Assistants Attorney General, for defendant.

KAVANAGH, J. The appellee herein, department of revenue, made an assessment against appellant, Central Discount Company, for an alleged deficiency in intangibles taxes for the years 1945 through 1950 in the amount of $2,024.78, penalty of $506.19 and interest of $274.68, making a total assessed deficiency of $2,805.65. Central Discount Company (hereinafter referred to as "Central") appealed this assessment to the State board of tax appeals. The board determined that Central owed no tax. The department of revenue took an appeal limited only to questions of law from the order of the board as provided by statute (CL 1948, § 205.9 [Stat Ann 1950 Rev

§ 7.657(9)]).  On appeal the Ingham circuit court reversed the decision of the board and determined liability for tax as a matter of law.  In reversing the finding of the board that the transactions between the parties amounted to sales of the intangibles by Central thereby rendering Central not liable for the tax under the Michigan intangibles tax act (PA 1939, No 301, as amended [CL 1948, § 205.131 *et seq.* (Stat Ann 1950 Rev § 7.556[1] *et seq.*)]), the circuit court held that the transactions were in reality loans, not sales, and that the transfer of the instruments was made for the purpose of security only.  Central now appeals the opinion of the circuit court.

Central has its principal office and place of business in Detroit, Michigan.  Central entered into a contract with Securities Investment Company of St. Louis, Missouri (hereinafter referred to as "Securities"), a Delaware corporation, on October 6, 1941.

Under the contract Central would purchase retail instalment sales notes secured by chattel mortgages on new and used automobiles from various automobile dealers.  As Central had insufficient funds with which to pay dealers under these instalment sales contracts the parties arranged for Securities to open an account at a Detroit bank and transfer money to Central's account in that same bank upon drafts being presented with the delivery of notes and mortgages made by retail purchasers.  These documents were indorsed and assigned by Central to Securities. The purchase price was determined by a discount charge agreed upon by Central and Securities.

The full purchase price was not paid immediately. The unpaid portion was held by Securities as a reserve to assure it of Central's performance of collection obligations as provided in the contract.  The amount paid by Central to the dealer plus an amount equivalent to 2% of that amount was immediately paid by Securities to Central.

Central paid insurance premiums on the automobiles covered by chattel mortgages, and upon presentation of these paid bills Securities reimbursed Central and received credit on the reserve account. The balance of the reserve account represented the amount owing by Securities to Central for the balance of the purchase price of the notes and mortgages. Each note and mortgage had a separate reserve. If upon liquidation of the notes and mortgages any loss was sustained it was charged against the reserve. Upon full payment of a note Central received the remainder of the reserve. Central guaranteed payment in full of all the notes. Central had an option to purchase from Securities all of the notes by paying the aggregate balance then owing, at which time all reserves were to be paid or credited to Central.

Central collected payments from individual purchasers named in the notes and mortgages and deposited the amounts daily in the form received in the account maintained by Securities at the bank in Detroit. Central had no right of withdrawal from this account. Central made daily reports to Securities showing receipts and disbursements and Securities audited the accounts every 60 days.

The sole question in the case is: Did Central effect a sale of the intangibles described in the agreement in such a fashion that it passed complete ownership to Securities so as not to be liable under the Michigan intangibles tax act?

Michigan uniform sales act (CL 1948, § 440.1 *et seq.* [Stat Ann § 19.241 *et seq.*]) defines a sale as follows:

"A sale of goods is an agreement whereby the seller transfers the property in goods to the buyer for a consideration called the price."

The difficulty arising in a case of this kind is to be able to tell whether or not the seller has parted with the complete ownership of the goods.

46 Am Jur, Sales, § 2, pp 195, 196, says in part:

"A sale is the transfer of the general or absolute, as distinguished from a special, property in a thing. A sale is said to be an entire and absolute transfer of the thing sold, without reservation."

A particular transaction may constitute a form of transfer other than a sale where the essential elements of a sale are lacking. The fact that the instrument bears the title "Contract of Sale" is unimportant, if the body of the instrument indicates that the intention of the parties was to enter into some other form of agreement. *Puryear-Meyer Grocer Co.* v. *Cardwell Bank* (Mo App), 4 SW2d 489.

A bill of sale, absolute on its face, may be shown by extrinsic evidence, to be a chattel mortgage. *Klingensmith* v. *James B. Clow & Sons,* 270 Mich 460.

The case of *Union Securities, Inc.,* v. *Merchants' Trust & Savings Co.,* 205 Ind 127 (185 NE 150, 95 ALR 1189), is authority for the position that if from all the facts of the transaction it clearly appears that what the parties called a sale was in reality not a sale, but a loan, the court must decide according to the real nature of the transaction without regard to the terms applied to it by the parties.

Although the parties in this instance called the contract a sale, the elements of a sale were lacking. Absolute ownership was not passed to Securities. The following provisions of the contract bear this out:

1. The right and option of Central to purchase from Securities at any time all of said notes and chattel mortgages held by Securities by paying the total unpaid balance.

2. If purchase by Central was made, Securities refunded to Central the amount of any reserves held by Securities under the individual contract.

3. As each note was paid in full the remainder of the reserve set up on Securities' books for that account was paid to Central.

4. Central guaranteed payment in full of all notes.

5. If the payer defaulted on the costs, Central was required to repossess the automobile and to pay whatever balance existed after a sale of it to Securities.

6. Central was required to keep the automobiles constituting the security for the intangible property insured although it was reimbursed by Securities except in the event of cancellation.

7. If the insurance was cancelled a new insurance was obtained by Central at its own cost.

8. No fixed price was involved, but an agreed 2% discount of the face value was paid Central by Securities.

All of the above elements indicate that it was the intention of the parties that the transactions were in reality loans and not sales. The lower court reached this conclusion. We think it was right.

The decision of the trial court is affirmed, with costs to appellee.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, EDWARDS, and VOELKER, JJ., concurred.