STRATTON-CHEESEMAN MANAGEMENT COMPANY v
DEPARTMENT OF TREASURY

Docket No. 91914. Submitted February 11, 1987, at Lansing. Decided
April 22, 1987.

Stratton-Cheeseman Management Company, a Michigan corpora-
tion, manages Michigan Physicians Mutual Liability Insurance
Company, a medical malpractice insurer, under a services
contract which calls for the insurance company to reimburse
the management firm for reasonable costs incurred on the
insurance company's behalf, including but not limited to sala-
ries, wages, outside contractual services, and allocated over-
head. In filing its single business tax returns for 1980-1983,
Stratton-Cheeseman included these reimbursement payments
in its gross receipts subject to tax. Stratton-Cheeseman filed for
a refund of the taxes paid on those sums and the Department
of Treasury denied the claims. Stratton-Cheeseman filed a
complaint in the Court of Claims against the Department of
Treasury for the refunds. The court, Jack W. Warren, J., giving
deference to the department's interpretation of "gross re-
ceipts," granted summary judgment to defendant. Plaintiff
appealed.

The Court of Appeals *held:*

The court erred in giving deference to the department's
interpretation of "gross receipts," since there is no ambiguity
in the definition of gross receipts in the Single Business Tax
Act. However, payments made to a taxpayer under a services
contract to reimburse the taxpayer for reasonable costs in-
curred on the payor's behalf including salaries, wages, outside

R**EFERENCES**

Am Jur 2d, Administrative Law §§ 233-236, 241.

Am Jur 2d, State and Local Taxation §§ 258 *et seq.*; 447, 491.

Am Jur 2d, Statutes §§ 145, 168, 172, 194, 195.

Supreme Court's views on weight to be accorded to pronouncements
of legislature, or members of legislature, respecting meaning or
intent of previously exacted statute. 56 L Ed 2d 918.

Supreme Court's views on weight and effect to be given, on subse-
quent judicial construction, to prior administrative construction
of statute. 39 L Ed 2d 942.

contractual services and allocated overhead are includable as gross receipts as defined by the Single Business Tax Act.

Affirmed.

1. STATUTES — JUDICIAL CONSTRUCTION.

The primary object of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature; the language of the statute is the best source for ascertaining the intent of the Legislature.

2. STATUTES — JUDICIAL CONSTRUCTION.

An act must be read in its entirety and the meaning given to one section arrived at after due consideration of other sections so as to produce; if possible, a harmonious and consistent enactment as a whole.

3. STATUTES — ADMINISTRATIVE INTERPRETATION OF STATUTES — JUDICIAL CONSTRUCTION.

A long-standing administrative interpretation of the meaning of a statute, while entitled to considerable weight, is not conclusive and cannot be used by a court to overcome a logical reading of a statute.

4. STATUTES — JUDICIAL CONSTRUCTION.

If an act is clear and unambiguous, then judicial construction or interpretation is unwarranted; however, if a statute is ambiguous or susceptible to two or more constructions that could cause reasonable minds to disagree as to its meaning, the statute must be interpreted.

5. TAXATION — SINGLE BUSINESS TAX — GROSS RECEIPTS.

The term "gross receipts" as defined in the Single Business Tax Act excludes amounts received by a taxpayer solely in an agency or representative capacity but includes amounts received as consideration for the performance of personal services (MCL 208.7[3]; MSA 7.558[7][3]).

6. TAXATION — SINGLE BUSINESS TAX — GROSS RECEIPTS — REIMBURSEMENT PAYMENTS.

Payments made to a taxpayer under a services contract to reimburse the taxpayer for reasonable costs incurred on the payor's behalf including salaries, wages, outside contractual services and allocated overhead are includable as gross receipts under the Single Business Tax Act (MCL 208.7[3]; MSA 7.558[7][3]).

*MacLean, Seaman, Laing & Guilford* (by *Kenneth Laing*), for plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Richard R. Roesch* and *Thomas J. Kenny,* Assistant Attorneys General, for defendant.

Before: HOOD, P.J., and MACKENZIE and R. M. PAJTAS,* JJ.

MACKENZIE, J. Plaintiff appeals as of right from a Court of Claims grant of summary disposition under MCR 2.116(C)(10) to defendants, upholding the Department of Treasury's decision not to pay a single business tax (SBT) refund of $60,013 to plaintiff for the taxable period July 1, 1979, through June 30, 1983, because plaintiff's claimed "gross receipts" subject to the tax were incorrect. We affirm.

The facts are not in dispute. Plaintiff, a Michigan corporation, has as its principal function the management of Michigan Physicians Mutual Liability Company, a medical malpractice insurance company. Plaintiff manages the insurance company under a written services agreement which authorizes it to perform certain duties, including:

(1) to receive and process applications for insurance;

(2) to issue insurance policies;

(3) to bill, collect, and deposit premiums and other fees into a banking facility designated by the insurance company;

(4) to maintain appropriate reserves for claims;

(5) to administer claims;

(6) to maintain records and regularly report to the insurance company; and

(7) "to strictly abide by an operating budget set for the management firm by the company's board

* Circuit judge, sitting on the Court of Appeals by assignment.

of directors. Any management firm expenditures which will exceed the amounts set by said budget will have to be submitted to and approved by the company's board of directors."

Plaintiff receives compensation in two ways. Under § 4(1)(ii) of the services agreement, plaintiff receives a monthly fee at a fixed rate per policyholder. Under § 4(1)(i), plaintiff is reimbursed for reasonable costs incurred on the insurance company's behalf, including but not limited to plaintiff's salaries, wages, outside contractual services, and allocated overhead.

In filing its SBT return for the tax years ending June 30, 1980, through 1983, plaintiff included as gross receipts both its monthly fee and the sums received from the insurance company as reimbursements for expenditures. In May, 1984, plaintiff filed amended SBT returns, claiming that only the monthly fee, and not expenditures, constituted gross receipts subject to the tax. The department rejected plaintiff's resulting refund claims for each tax year.

Plaintiff filed a complaint with the Court of Claims to recover the refunds. Thereafter, plaintiff filed a motion for summary disposition under MCR 2.116(C)(10). Plaintiff claimed that, under the services agreement, the reimbursements for expenditures which it received from the insurance company were received in an agency or other capacity so that they were not gross receipts as defined in subsection 7(3) of the Single Business Tax Act (SBTA), MCL 208.7(3); MSA 7.558(7)(3). That subsection provides:

"Gross receipts" means the sum of sales, as defined in subsection (1), and rental or lease receipts. *Gross receipts does not include the amounts received in an agency or other representative ca-*

*pacity,* solely on behalf of another or others *but not* including amounts received by persons having the power or authority to expend or otherwise appropriate *such amounts in payment for or in consideration of sales or services made or rendered by themselves or by others acting under their direction* and control or by such fiduciaries as guardians, executors, administrators, receivers, conservators, or trustees other than trustees of taxes received or collected from others under direction of the laws of the federal government or of any state or local governments. [Emphasis added.]

Subsection (1), referred to in the above definition, provides in pertinent part:

"Sale" or "sales" means the gross receipts arising from a transaction or transactions in which gross receipts constitute consideration: . . . (b) for the performance of services, which constitute business activities . . . . [MCL 208.7(1); MSA 7.558(7)(1).]

The department filed a cross-motion for summary disposition under MCR 2.116(C)(10), contending that the reimbursed costs were payments for services provided by plaintiff pursuant to a cost-plus contract, and thus constituted gross receipts. This contention was based on the following departmental interpretation of gross receipts as defined in subsection 7(3) of the SBTA, MCL 208.7(3) *et seq.;* MSA 7.558(7)(3) *et seq.,* when payments are received by the taxpayer under a services contract:

(c) Where the parties enter into a cost-plus contract for the performance of a service, all payments received by a person for the performance of the service, whether it is a reimbursed expense or a monthly fee is considered part of the servicer's gross receipts for purposes of calculating the single business tax. If the Single Business Tax Act were

administered to exclude reimbursed expenses from the tax base, then the services would in substance be taxed only on gross profit.

The Court of Claims, giving deference to the department's interpretation of gross receipts, granted summary disposition to the department.

The issue before us is whether the trial court erred in ruling that monies received by plaintiff as reimbursement for costs under the services agreement constituted gross receipts as defined in the SBTA. The resolution of this issue requires both statutory construction of the term gross receipts, as defined in § 7 of the SBTA, and an application of that definition to the "reimbursements" received by plaintiff.

In construing statutes the following principles apply. The primary objective of judicial construction is to ascertain and give effect to the Legislature's intent. The language of the statute is the best source for ascertaining intent. *In re Condemnation of Lands,* 133 Mich App 207, 210-211; 349 NW2d 261 (1984), lv den 421 Mich 856 (1985). An act must be read in its entirety and the meaning given to one section arrived at after due consideration of the other sections so as to produce, if possible, a harmonious and consistent enactment as a whole. *King v Director of the Midland Co Dep't of Social Services,* 73 Mich App 253, 258; 251 NW2d 270 (1977). Long-standing administrative interpretations by those charged with administering a statute are entitled to considerable weight. See *People v Dunn,* 104 Mich App 419, 425; 304 NW2d 856 (1981); *Magreta v Ambassador Steel Co,* 380 Mich 513, 519; 158 NW2d 473 (1968). However, an administrative interpretation is not conclusive and cannot be used to overcome a logical reading of the statute. *People v Dunn, supra,* p 425. If an

act is clear and unambiguous, then judicial construction or interpretation is unwarranted. *Lake Carriers' Ass'n v Director of the Dep't of Natural Resources,* 407 Mich 424, 429; 286 NW2d 416 (1979). If a statute is ambiguous or susceptible to two or more constructions that could cause reasonable minds to disagree as to its meaning, the statute must be interpreted. *Shelby Charter Twp v State Boundary Comm,* 425 Mich 50, 72; 387 NW2d 792 (1986).

We find no ambiguity in the meaning of gross receipts as defined by the SBTA. The definition clearly excludes from gross receipts the amount received by a taxpayer solely in an agency or representative capacity, while including amounts received as consideration for the performance of personal services. Since the language of the statute is clear, the Court of Claims erred in giving deference to the department, as a matter of statutory construction, in finding that the reimbursement payments received by plaintiff were includable in gross receipts.

We turn, then, to the question of whether plaintiff's reimbursement payments under the services agreement fit within the clear statutory definition of gross receipts. It is the substance of a transaction rather than the terms applied by the parties which determines how to characterize the payment for tax purposes. See *Central Discount Co v Dep't of Revenue,* 355 Mich 463, 467; 94 NW2d 805 (1959). In a multiparty transaction, this Court should honor the allocation of rights and duties effected by the parties in an agreement, when supported by tax-independent considerations. *Connors & Mack Hamburgers, Inc v Dep't of Treasury,* 129 Mich App 627; 341 NW2d 846 (1983).

Here, the department construed the services agreement entered into by plaintiff and the insur-

ance company as a cost-plus personal services contract and characterized plaintiff as an independent contractor in concluding that the reimbursement payments constituted gross receipts. Plaintiff, on the other hand, relied on the express language of the services agreement providing for the reimbursement of reasonable costs incurred on the insurance company's behalf, and contended that it was acting in an agency capacity in making the disbursements subsequently reimbursed by the insurance company.

An agency relationship can be established by contract. *Ayer v Devlin,* 179 Mich 81; 146 NW 257 (1914). "Agent" was defined by our Supreme Court in *Stephenson v Golden,* 279 Mich 710, 734-735; 276 NW 849 (1937), as follows:

> "An agent is a person having express or implied authority to represent or act on behalf of another person, who is called his principal." Bowstead on Agency (4th ed), p 1.
>
> "An agent is one who acts for or in the place of another by authority from him; one who undertakes to transact some business or manage some affairs for another by authority and on account of the latter, and to render an account of it. He is a substitute, a deputy, appointed by the principal, with power to do the things which the principal may or can do." 2 CJS p 1025.
>
> The term "agent" includes factors, brokers, etc. 2 CJS p 1025.
>
> As said in *Saums v Parfet,* 270 Mich 165 [171-172; 258 NW 235 (1935)]:
>
> "'"Agency" in its broadest sense includes every relation in which one person acts for or represents another by his authority.' 2 CJ p 419.
>
> ."'Whether an agency has been created is to be determined by the relations of the parties as they in fact exist under their agreements or acts.' 21 RCL p 819.

" 'The characteristic of the agent is that he is a business representative. His function is to bring about, modify, affect, accept performance of, or terminate contractual obligations between his principal and third persons. To the proper performance of his functions, therefore, it is absolutely essential that there shall be third persons in contemplation between whom and the principal legal obligations are to be thus created, modified, or otherwise affected by the acts of the agent.' 1 Mechem on Agency (2d ed), p 21."

Mindful of these definitions, we are of the opinion that when plaintiff received and deposited into bank accounts designated by the insurance company premiums and other monies it was acting as an agent; these funds were intended by the Legislature to be excluded from the meaning of gross receipts in § 7(3) of the SBTA. However, the payments received by plaintiff as reimbursement for costs incurred in managing the insurance company's business clearly were not. Plaintiff did not receive this money from the insurance company as a representative of the insurance company. Instead, the substance of the reimbursement payments for tax purposes was to compensate plaintiff for services provided in managing the insurance company's business. The fact that the insurance company reserved the right to approve costs prior to making payments and required plaintiff to operate within an approved budget does not alter this conclusion. In this regard, the insurance company's right to approve the amount of reasonable costs subject to reimbursement must be distinguished from plaintiff's right to authorize the actual expenditures. Plaintiff's contention that the insurance company "retained control" over costs fails to make this distinction.

As the department correctly contends, to accept

plaintiff's theory would result in only the monthly fees received by plaintiff, which are computed based on a fixed rate per policyholder, being subject to the tax. Since the monthly fees essentially represent gross profits above and beyond plaintiff's costs, the purpose of the SBTA to impose a tax on the value of business activity, and not its income, would be defeated. We therefore conclude that the Court of Claims, although erring in its decision to give deference to the department as a matter of statutory construction, was correct in its decision to grant summary disposition to the department. No genuine issue of material fact was asserted by the parties. From the plain language of the services agreement, the substance of the reimbursement payments should be characterized for tax purposes as consideration for the performance of services.

Affirmed.