CREDIT ACCEPTANCE CORPORATION v DEPARTMENT OF
TREASURY

Docket No. 201863. Submitted September 1, 1998, at Lansing. Decided
July 2, 1999, at 9:05 A.M. Leave to appeal sought.

Credit Acceptance Corporation petitioned the Michigan Tax Tribunal,
seeking the cancellation of assessments by the Department of Trea-
sury of single business tax allegedly owed by the petitioner. The
issue presented was whether certain fees collected by the peti-
tioner constitute "gross receipts" under § 7 of the Single Business
Tax Act, MCL 208.7; MSA 7.558(7). The tribunal found that the fees
did not constitute gross receipts and ordered that the assessments
be canceled. The respondent appealed, alleging that the fees
received by the petitioner, a business that collects money due
under installment sales contracts executed between its automobile
dealership customers and automobile purchasers, as reimburse-
ment for all collection costs expended by the petitioner in repos-
sessing the vehicles of delinquent purchasers and reselling the vehi-
cles to collect the defaulted debt constitute gross business receipts
includable within its tax base under § 7. The parties do not dispute
that the petitioner's servicing fee of twenty percent of all collec-
tions, net of collection costs, constitutes gross business receipts to
the petitioner subject to single business tax.

The Court of Appeals *held*:

1. The definition of gross receipts clearly excludes from gross
receipts the amount received by a taxpayer solely in an agency or
representative capacity but includes amounts received as consider-
ation for the performance of personal services. The reimbursement
in this case constitutes consideration for the performance of per-
sonal services.

2. The sums the petitioner collects after a dealer's security inter-
est in the financed vehicle is transferred to the petitioner for
administration, servicing, and collection are for the petitioner's
own account rather than as an agent for the dealer because, for all
practical purposes, the petitioner becomes the contract holder,
with all the incidents of a creditor under the contract and owner-
ship of the debt and of security for its payment. The tribunal
applied improper principles of contract law in classifying the ser-

vicing agreement between the petitioner and its dealer-customers as an agency agreement and not a sales contract.

3. The repossession costs are funds expended by the petitioner to foreclose on collateral for the payment of debts owed by the petitioner to its dealer-customers pursuant to the prior transfer of security interests from the dealer-customers. Those costs constitute consideration received by the petitioner for the repossession and sale of collateral and constitute a portion of the petitioner's gross receipts.

Reversed.

MARKMAN, J., concurring in the analysis and the result of the majority opinion, wrote separately to address certain aspects of the Tax Tribunal opinion. Although the tribunal determined that the contracting and subsequent collection costs did not constitute a "sale" under § 7, the issue is whether the contractual relationship falls within the purview of the requisite agency as envisioned by the Single Business Tax Act. The tribunal erred in finding that the petitioner receives no financial gain when an automobile is repossessed. Repossession of the automobiles is an indispensable aspect of the business of servicing the accounts. The petitioner provides a service, the administration of accounts receivable, and prefers to outsource to a third party the portion of that service concerning the repossession of automobiles. This outsourcing constitutes an expense of providing this service. The repossession costs do aid in the generation of a portion of the petitioner's gross receipts under the terms of the Single Business Tax Act.

TAXATION — SINGLE BUSINESS TAX — GROSS RECEIPTS.

The term "gross receipts" as defined in the Single Business Tax Act excludes amounts received by a taxpayer solely in an agency or representative capacity but includes amounts received as consideration for the performance of personal services (MCL 208.7[1], [3]; MSA 7.558[7][1], [3]).

*Howard & Howard Attorneys, P.C.* (by *Michele L. Halloran* and *Donna M. Clarke*), for the petitioner.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Ross H. Bishop*, Assistant Attorney General, for the respondent.

Before: MACKENZIE, P.J., and BANDSTRA and MARKMAN, JJ.

MacKENZIE, P.J. Respondent Department of Treasury appeals as of right from a Michigan Tax Tribunal judgment holding that certain fees collected by petitioner Credit Acceptance Corporation do not constitute "gross receipts" under § 7 of the Single Business Tax Act, MCL 208.7; MSA 7.558(7). We reverse.

The facts are not in dispute. Petitioner's business involves the collection of money due under installment sales contracts executed between automobile dealerships and automobile purchasers. Petitioner's relationship with its automobile dealer customers is set forth in a uniform servicing agreement contract into which petitioner enters with each dealer. This contract characterizes petitioner as the "servicing agent" to collect sums owed by the automobile purchaser to the dealership. In exchange, petitioner is entitled to retain as its "servicing fee" twenty percent of all collections. The parties agree that the twenty percent servicing fee constitutes gross business receipts to petitioner and is accordingly subject to single business tax.

The servicing agreement between petitioner and its dealer-customers also provides that when automobile payments become delinquent, petitioner, "on behalf of the dealers . . . shall use reasonable efforts to repossess . . . and sell or otherwise liquidate the Financed Vehicle." In addition to its twenty percent "servicing fee," petitioner is authorized under the contract to "reimburse" itself for all collection costs expended by it in repossessing and reselling automobiles as necessary to collect defaulted debt.

The issue in this case is whether "reimbursement" to petitioner of repossession costs constitutes gross

business receipts includable within its tax base under MCL 208.7; MSA 7.558(7).

MCL 208.7; MSA 7.558(7) defines "sale" and "gross receipts" for purposes of the single business tax as follows:

> (1) "Sale" or "sales" means the gross receipts arising from a transaction or transactions in which gross receipts constitute consideration: . . . (b) for the performance of services, which constitute business activities . . . .
>
> *     *     *
>
> (3) "Gross receipts" means the sum of sales, as defined in subsection (1), and rental or lease receipts. Gross receipts does not include the amounts received in an agency or other representative capacity, solely on behalf of another or others but not including amounts received by persons having the power or authority to expend or otherwise appropriate such amounts in payment for or in consideration of sales or services made or rendered by themselves or by others acting under their direction and control . . . .

In *Stratton-Cheeseman Management Co v Dep't of Treasury*, 159 Mich App 719, 725; 407 NW2d 398 (1987), this Court held that the "definition [of gross receipts] clearly excludes from gross receipts the amount received by a taxpayer solely in an agency or representative capacity, while including amounts received as consideration for the performance of personal services."

We conclude that the "reimbursement" in this case constitutes consideration for the performance of personal services. Article II of the servicing agreement requires the automobile dealer to transfer retail installment sales contracts to petitioner "for administration, servicing and collection." The dealer's security interest in the financed vehicle is assigned to peti-

tioner, and petitioner's name is placed as lienholder on all titles to financed vehicles. If any payments on an installment sales contract are made to the dealer after the contract has been transferred to petitioner, these payments must be forwarded by the dealer to petitioner. In the event an automobile purchaser defaults under a contract, petitioner is free to repossess and sell the financed vehicle, following such "procedures as it deems necessary or advisable." Petitioner is granted a security interest in "all [r]eceivables now or hereafter transferred to [petitioner] pursuant to this Agreement . . . together with all proceeds."

The consideration petitioner pays to its dealer-customers for their present transfer of the installment sales contracts and associated security interests is petitioner's promise to pay eighty percent of the amounts subsequently collected or received on each contract to the originating dealer, net of all collection costs, which include those associated with repossession and sale of defaulted collateral.

In short, for all practical purposes, upon transfer of the retail installment sales contract to petitioner, petitioner becomes the contract holder, with all the incidents of a creditor under the contract, including a security interest in the financed vehicle, and all the incidents of ownership of the debt and of security for its payment. The sums petitioner subsequently collects are for its own account rather than as an "agent" for the dealer.

This Court reviews the decision of the Tax Tribunal to determine whether the tribunal made an error of law or adopted a wrong legal principle. *Schubert v Dep't of Treasury*, 212 Mich App 555, 558; 538 NW2d

447 (1995). The Tax Tribunal in this case applied improper principles of contract law when it classified the relationship established by the servicing agreement between petitioner and its dealer-customers. The agreement was in fact a sales contract and not an agency agreement.

The repossession costs at issue here are funds expended by petitioner to foreclose on collateral for payment of a debt owned by petitioner pursuant to prior transfer from a dealer-customer. Amounts retained by petitioner for these repossession costs, whether they are referred to by the parties as "reimbursement" or not, constitute consideration received by petitioner for the repossession and sale of collateral, and accordingly constitute a portion of petitioner's gross receipts just as does petitioner's twenty percent fee.

Reversed.

BANDSTRA, J., concurred.

MARKMAN, J. *(concurring)*. I concur fully in the analysis and the results reached by the majority opinion. I write separately only to address further certain aspects of the opinion of the Tax Tribunal. Although the tribunal determined that the contracting and subsequent reimbursement of collection costs did not constitute a "sale" under § 7 of the Single Business Tax Act (SBT), MCL 208.7; MSA 7.558(7), as observed in *Stratton-Cheeseman Management Co v Dep't of Treasury*, 159 Mich App 719; 407 NW2d 398 (1987), and *APCOA v Dep't of Treasury*, 212 Mich App 114; 536 NW2d 785 (1995), the issue, in my judgment, is whether the contractual relationship established between petitioner and its clients falls within the pur-

view of the requisite agency as envisioned by the SBT. Before addressing that issue, however, it appears that the tribunal's holding that the contracting and reimbursement of these collection costs was not a sale may have been erroneous or based on a clearly erroneous finding of fact. The tribunal held, in essence, that because petitioner derives no financial gain (apparently because petitioner does not mark up or increase its actual collection costs) from the repossessions, the reimbursement of these costs did not constitute consideration for services and, consequently, could not be characterized as a "sale" under the SBT definition. This holding, however, does not take into consideration that petitioner *does* have a financial incentive to initiate repossession procedures. Upon the default of a creditor, petitioner will cease receiving any gross receipts from that particular account receivable. If, however, the automobile is repossessed, then petitioner receives its twenty percent commission when the automobile is thereafter sold, as with other gross receipts received on nondefaulting accounts. Therefore, it was erroneous for the tribunal to find that petitioner receives no financial gain whatsoever when an automobile is repossessed.

The tribunal's observation that petitioner was "not in the business of repossessing cars," and its determination that these reimbursements were therefore exempt appears incorrect given that petitioner is in the business of servicing accounts receivable. Repossession of the automobiles, for which petitioner holds the lien, appears to be an indispensable aspect of the business of servicing such accounts. Further evidence that repossessions are an unavoidable aspect of providing this service is the fact that these procedures

are specifically set forth in petitioner's service contracts. Therefore, it appears that this rationale for exemption is without merit. As mentioned above, petitioner is in the business of servicing accounts receivable and chose to outsource the repossession portion of this business to a third party as opposed to providing this service in-house.

Concerning the matter of agency, an agency relationship can be established by contract. *Stratton, supra* at 726. In *Stratton*, this Court discussed the definition of "agency" in the context of the SBT "gross receipts" proviso of MCL 208.7(3); MSA 7.558(7)(3). It quoted the following definitions:

> "Agent" was defined by our Supreme Court in *Stephenson v Golden*, 279 Mich 710, 734-735; 276 NW 849 (1937), as follows:
>
> " 'An agent is a person having express or implied authority to represent or act on behalf of another person, who is called his principal.' Bowstead on Agency (4th ed), p 1.
>
> " 'An agent is one who acts for or in the place of another by authority from him; one who undertakes to transact some business or manage some affairs for another by authority and on account of the latter, and to render an account of it. He is a substitute, a deputy, appointed by the principal, with power to do the things which the principal may or can do.' " 2 CJS p 1025.
>
> "The term 'agent' includes factors, brokers, etc. 2 CJS p 1025.
>
> "As set forth in *Saums v Parfet*, 270 Mich 165, [171-172; 258 NW 235 (1935)]:
>
> " ' " 'Agency' " in its broadest sense includes every relation in which one person acts for or represents another by his authority.' 2 CJ p 419.
>
> " ' "Whether an agency has been created is to be determined by the relations of the parties as they in fact exist under their agreements or acts.' " 21 RCL p 819.

> " ' "The characteristic of the agent is that he is a business representative. His function is to bring about, modify, affect, accept performance of, or terminate contractual obligations between his principal and third persons. To the proper performance of his functions, therefore, it is absolutely essential that there shall be third persons in contemplation between whom and the principal legal obligations are to be thus created, modified, or otherwise affected by the acts of the agent.' " 1 Mechem on Agency (2d ed), p 21.' " [*Stratton, supra* at 726-727.]

On the basis of its consideration of these definitions, the *Stratton* Court held that, when the plaintiff received and deposited into bank accounts insurance company premiums and other funds, it was acting as an agent. *Id.* at 727. However, it held that when reimbursed for costs incurred in managing the insurance company's business, the plaintiff did not receive this money as a representative of the insurance company because the substance of the reimbursement payments for tax purposes was to compensate the plaintiff for services provided in managing the insurance company's business, and therefore, the payments had to be characterized as consideration for the performance of services. *Id.* It should be noted that the Court there found unpersuasive the fact that the insurance company reserved the right to approve costs before making payments and required the plaintiff to operate within an approved budget. *Id.* at 728. In *APCOA, supra* at 118, this Court, relying exclusively on *Stratton*, also upheld the Tax Tribunal's holding that petitioner *APCOA* did not receive reimbursed expenses "in an agency capacity" where the expenses incurred were necessary to generate its management fee.

In this case, the Tax Tribunal held:

> Section 2.01(d) [of the serving agreement] states the Ser-
> vicer will service and administer receivables *on behalf of
> dealer*. Section 2.01(e) states the Servicer is an independent
> contractor, and "shall have no duties or responsibilities,
> except those expressly set forth herein . . . ." The Tribunal
> finds repossession costs are incurred by Petitioner in an
> agency capacity for the benefit of the dealers. The dealers
> have the ability to control whether or not an automobile is
> repossessed. Petitioner does not operate completely auton-
> omous of the dealer nor does it have to repossess automo-
> biles to receive a 20% service fee. The formula used by Peti-
> tioner, and described in section 3.03, does not produce a
> financial gain as a result of the repossession costs. The
> amount of reimbursement is the same amount as the cost
> incurred. Repossession costs would only occur when a per-
> son defaults on a loan. [Emphasis in original.]

It appears that the tribunal relied heavily on the con-
tractual language of subsection 2.01(d), which states
that petitioner is acting "on behalf" of the dealer. It
should be noted, however, that it is the substance of
the transaction rather than the terms applied by the
parties that determines how to characterize a pay-
ment for tax purposes. *Stratton, supra* at 725. The
Court may, however, choose to defer to the terms of
a contract. *Id.* The substance of this transaction
appears to be that petitioner provides a service, as a
self-proclaimed independent contractor, namely; the
administration of accounts receivable, and prefers to
outsource a portion of that service, namely, the
repossession of automobiles, to a third party. In my
judgment, this outsourcing constitutes an expense of
providing this service. Petitioner is merely choosing
to expend its capital to hire a third party to provide
this aspect of the service rather than expend funds to
hire and train its own employees to furnish this
aspect of the service.

The tribunal also reasoned that, because the dealers have the ability to control whether an automobile is repossessed and therefore petitioner does not operate autonomously, petitioner is acting "solely in an agency capacity." Again, it appears that the tribunal may have relied on erroneous findings. Brett Roberts, petitioner's chief financial officer, testified that the decision whether to repossess was made pursuant to petitioner's corporate policies. Further, petitioner held the lien on the car and was in essence the only real party in interest that could repossess the car. It was evident from the record that petitioner's alleged "lack of autonomy" was nothing more than an occasional consultation with a dealer in an attempt to reinforce customer relations. Richard Vanderport testified that, as a dealer and a former customer of petitioner, he never dealt with the accounts after they were transferred to petitioner. Most importantly, even if there was a degree of control over petitioner's policy of repossession, this consideration was not deemed dispositive in *Stratton, supra* at 727, where the insurance company reserved the right to approve costs before reimbursement.

As seen from the vantage point of *Stratton*, it is apparently possible to be an independent contractor with regard to one aspect of a contract while acting solely in an agency capacity with regard to another. Whatever the merits of this proposition, in both *Stratton* and *APCOA*, the issue appeared to be decided on the basis of whether the reimbursed expenses were used in the generation of the management fees. If indeed the expenses were used to generate the management fees, then their reimbursement would not occur "solely in an agency capacity." Thus, the issue

in the instant case becomes whether the repossession costs aided in the generation of petitioner's twenty percent commission. The tribunal stated that it "disagrees and finds *APCOA* can be distinguished from the instant case. Petitioner can receive the twenty percent service fee for servicing accounts receivable; in *APCOA*, the expenditures were necessary or no fee could be generated." As stated above, petitioner *does* have a financial incentive to initiate repossession procedures because, upon repossession and sale, petitioner receives its commission. Petitioner may not be required to initiate repossessions to generate a portion of its commission; however, if a creditor defaults, then no further commission will be generated without the expenditure of these repossession costs. Therefore, because these repossession costs do aid in the generation of a portion of petitioner's gross profits, they are not incurred "solely on behalf of another" and should properly be included in petitioner's "gross receipts" under the terms of the SBT.